**Hedia Faye HALL, Plaintiff,**

v.

**Thomas L. ROBERTS III, M.D.,
Defendant.**

Civ. A. No. 81–0052–C.

United States District Court,
W. D. Virginia,
Charlottesville Division.

Sept. 21, 1982.

Walter O. Waddey, Kingsport, Tenn., James R. St. Martin, Gate City, Va., for plaintiff.

John Epps, Charlottesville, Va., for defendant.

## MEMORANDUM OPINION

MICHAEL, District Judge.

Plaintiff, Hedia Faye Hall, brings this diversity action pursuant to 28 U.S.C. § 1332 alleging medical malpractice against the defendant, Thomas L. Roberts, M.D. This case is now before the court on defendant's plea of sovereign immunity and motion to dismiss for lack of jurisdiction and on defendant's motion to strike plaintiff's response to defendant's request for admissions. Although the defendant has articulated that the grounds for his motion to dismiss are that the Court lacks jurisdiction, the motion is more properly one for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), Fed.R. Civ.P. Accordingly, the Court will treat defendant's motion as one for failure to state a claim upon which relief can be granted and, because of the accompanying affidavits and oral testimonies submitted to the Court, as a motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P.

Plaintiff has submitted evidence that, due to her visual and cosmetic eye problems, her attending physician advised her to obtain a medical and surgical evaluation from the University of Virginia Hospital, Plastic Surgery Department, at Charlottesville, Virginia. Consequently, plaintiff visited the University of Virginia Hospital where her sister was a patient under the care of the defendant. Mrs. Hall made an appointment with the defendant and, following a conference and an examination, Dr. Roberts recommended that plaintiff undergo surgery at his hands in order to correct a drooping of her eyebrows and eyelids. Plaintiff submits that she admitted herself as an in-patient under defendant's care on February 4, 1979, without ever being ad-

vised by the defendant that he would be or was under the supervision of any other plastic surgeon or physician associated with the University of Virginia Hospital.

Following the initial surgery plaintiff underwent post-surgical examinations by the defendant or his designates and as a result of these examinations the defendant recommended that plaintiff undergo additional surgery. Accordingly, plaintiff readmitted herself to the University of Virginia Hospital, under the defendant's care, on April 25, 1979, again without being aware of or advised by the defendant that he was acting under the supervision of any other physician. Plaintiff states that the defendant held himself out to be a plastic surgeon competent to perform the operations which he recommended and that she believed that she entered into a doctor/patient relationship with the defendant.

In her complaint, plaintiff alleges that the defendant was, at all relevant times, the Chief Resident of the Department of Plastic Surgery at the University of Virginia Medical Center. Plaintiff alleges that the defendant is liable on the grounds that the defendant failed to inform her of the known risks and possible complications of the procedures so as to render her consent truly informed and voluntary and because the defendant negligently performed the surgery resulting in plaintiff's inability to close one eye completely and leaving her with bald spots on the scalp.

Dr. Roberts seeks a dismissal of plaintiff's complaint on a plea of Sovereign Immunity supported by his affidavit. Dr. Roberts avers that at all times relevant to the complaint he was a Resident in Plastic Surgery on the house staff of the University of Virginia Hospital under the immediate supervision of the attending staff; that his only compensation was by way of salary received from the University of Virginia Hospital; that he was required to treat those patients assigned to him and that he had no contractual relationship with his patients nor did he receive compensation from those patients assigned to him. Dr. Roberts states that the duties assigned to him require the exercise of discretion on his part within the scope of his instructions and that at all relevant times he was an employee of the University of Virginia Hospital acting within the course and scope of his employment.

On August 7, 1981, the defendant mailed plaintiff, who at that time was proceeding *pro se,* six requests for admissions. Plaintiff responded to the request on November 2, 1981 and on November 4, 1981 defendant filed a motion to strike plaintiff's response to defendant's request for admissions on the grounds that the response was untimely filed and that there was no compelling reason shown to permit such a late response. Defendant further moved the Court to order the defendant's request for admissions be deemed admitted, pursuant to Rule 36, Fed.R.Civ.P. Plaintiff filed a response to the defendant's Motion to Strike supported by the affidavit of plaintiff's counsel. After a careful review of the entire record in this proceeding, particularly of this Court's Order dated September 18, 1981, and plaintiff's counsel's affidavit, this court finds plaintiff's reasons for filing late responses to defendant's request for admissions to be sufficiently compelling to deny defendant's Motion to Strike. Therefore, in the interest of justice, this court will treat plaintiff's responses to the defendant's request for admissions as timely filed.

Plaintiff admits that the Rector and Visitors of the University of Virginia is a "body corporate" created pursuant to Virginia Code § 23–69 (1950), as amended; that the University of Virginia Medical Center does not exist as a separate legal entity from "the Rector and Visitors of the University of Virginia, body corporate."; that the University of Virginia Medical Center, as an agency of the Commonwealth of Virginia, is immune from action sounding in tort by virtue of sovereign immunity; and that the Rectors and Visitors of the University of Virginia are immune from action sounding in tort by virtue of sovereign immunity. Plaintiff, however, denies that the defendant was at all relevant times under the supervision of the attending staff at the

hospital and asserts that she was never advised that she was "assigned" to the defendant doctor. Plaintiff states that she can neither admit or deny that the defendant's salary received from the University of Virginia Hospital was his only compensation but rather contends that, notwithstanding his position as an employee of the University of Virginia Hospital, that he created and she accepted a doctor/patient relationship between them.

The Court heard argument on defendant's plea of sovereign immunity and motion to dismiss on November 4, 1981. At the hearing defendant proffered the testimony of Mr. Alex Sawyer, Assistant Director of the University of Virginia Hospital. Mr. Sawyer testified that during the time plaintiff was treated at the University of Virginia Hospital the defendant was Chief Resident in the hospital's Department of Plastic Surgery. Mr. Sawyer testified that he is intimately familiar with the Residency program at the University of Virginia Hospital and explained that the term Intern was no longer used; rather the term Resident is used to describe a physician receiving training under the supervision of both faculty and staff. Mr. Sawyer further explained that Residents were not Board certified and were not eligible to take the test for certification until completion of their residency. Mr. Sawyer testified that Residents were not on the faculty and that they did not send bills out in their own name; rather their sole compensation was a salary paid out of state appropriations and operating funds. Further, Sawyer says that all Residents are required to be under supervision and that supervision is an important aspect of Residency. Residents come up for reappointment every year. Sawyer also testified that Residents see patients as part of their training, and are permitted to use their discretion in the treatment afforded patients. Mr. Sawyer explained that a Chief Resident was a Resident in his last year of training who is designated to handle the administrative duties of the department, said duties consisting of scheduling and being spokesman for the other residents. Sawyer points out

that the clinical duties of a Chief Resident are the same as those of other Residents. Mr. Sawyer stated that the defendant was at all times under the supervision of Dr. Milton Edgerton, Chief Surgeon of the Department of Plastic Surgery. Dr. J. William Futrell also supervised the defendant, and was the attending physician in plaintiff's case. Mr. Sawyer testified that it was not the duty of an attending physician to supervise every action of a Resident, but rather to be available at all times during a normal working day and that it was always the responsibility of one attending physician to be on call at all times.

After hearing argument on the applicable law at the November 4, 1981 hearing, the Court requested counsel to submit affidavits concerning the relationship that existed between plaintiff and defendant and the relationship the supervising physician or physicians had with both plaintiff and defendant. Subsequently, the only affidavit submitted in response to the Court's request was that of the defendant, Dr. Roberts.

In his affidavit Dr. Roberts states that as a Resident in Training he was under the immediate supervision of an attending physician, in this case Dr. J. William Futrell, and that the assignment of all patients, including the plaintiff, were made to him by the plastic surgery clinic. Dr. Roberts avers that after initially being seen by him, all patients, including the plaintiff, were seen by the attending physician, Dr. Futrell. Roberts says that he discussed plaintiff's treatment options and treatment plans with Dr. Futrell and asserts that the final decision as to plaintiff's treatment was made by Dr. Futrell. Finally, Dr. Roberts says that Dr. Futrell, as attending physician, was present in the operating room during both the plaintiff's surgical procedures.

■ It has long been settled law in Virginia that a hospital which is an organ of the State is immune, under the Doctrine of Sovereign Immunity, from actions sounding in tort. *Maia's Adm'r. v. Eastern State Hospital,* 97 Va. 507, 34 S.E. 617 (1899). In the instant action, it is undisputed that the

University of Virginia's Medical Center, which is composed of the hospital, the medical school and the nursing school, is such an organ of the State. *See, Lawhorne v. Harlan,* 214 Va. 405, 200 S.E.2d 569 (1973), Virginia Code § 23–62 (1980 replacement volume). It is equally undisputed that Mrs. Hall's complaint states two causes of action both of which allege simple negligence on the part of the defendant. Therefore, the question becomes whether, under Virginia law, the defendant is entitled to the cloak of sovereign immunity for the alleged negligence. In Virginia, it has long been held that sovereign immunity is available, for allegations of simple negligence, to an employee of the State or one of its agencies who performs supervisory functions or exercises his discretionary judgment within the scope of his employment. *The City of Richmond v. Long's Adm'rs.,* 58 Va. 375 (1867); *Sayers v. Bullar,* 180 Va. 222, 22 S.E.2d 9 (1942). However, an employee of a State agency who performs duties which do not involve judgment or discretion but which are purely ministerial, is liable for injury which results from his negligence. *Wynn v. Gandy,* 170 Va. 590, 197 S.E. 527 (1938); *Berry v. Hamman,* 203 Va. 596, 125 S.E.2d 851 (1962).

In *Lawhorne v. Harlan, supra,* the Virginia Supreme Court addressed the question of whether a surgical intern at the University of Virginia's Medical Center was entitled to the cloak of sovereign immunity. The majority opinion held that he was. In so holding, the court emphasized that the intern was an employee of the hospital vested with and required to exercise discretion and judgment in connection with those persons who presented themselves as patients at the emergency room of the hospital. More specifically, that court held that the defendant,

... had no right to choose his patients, and no contractual relationship was created between him and the hospital's patients. He received no compensation from the patients for his services, his only compensation being the salary paid him by the hospital.

*Lawhorne v. Harlan, supra* 214 Va. at 408, 200 S.E.2d 569.

Although the facts before this court in the instant action are directly analogous to those in *Lawhorne,* this court's inquiry does not end here.

In the recent Virginia Supreme Court case of *James v. Jane,* 221 Va. 43, 267 S.E.2d 108 (1980), that court again addressed the issue of whether an agent or employee of the University of Virginia Medical Center was entitled to sovereign immunity. Consequently, the ultimate question for this court's determination is whether the Virginia Supreme Court's holding in the *James* case has left intact their holding in *Lawhorne.* This court holds that it does.

In *James v. Jane, supra,* the Virginia Supreme Court held that three licensed physicians and full-time members of the medical faculty of the University of Virginia Medical School were not entitled to immunity for alleged negligence in their treatment of patients at the Medical Center. The *James* court stated that no single all inclusive rule can be enunciated or applied in determining entitlement to sovereign immunity. That court stated that the greatest difficulty occurs when a state employee is charged with simple negligence and then claims the immunity of the State. Under such circumstances, the Virginia Supreme Court stated that the courts should:

... examine the function this employee was performing and the extent of the State's interest and involvement in that function. Whether the act performed involves the use of judgment and discretion is a consideration, but it is not always determinative. Virtually every act performed by a person involves the exercise of some discretion. Of equal importance is the degree of control and direction exercised by the State over the employee whose negligence is involved. In *Sayers* the control by the employer was absolute, and the discretion by the employees was minimal. In *Lawhorne* the State's interest and involvement were great, and all defendants were afforded immunity, but

for widely divergent reasons. The administrators were executive officers charged with the operation of a vast hospital complex. The State's interest demanded that they exercise wide discretionary powers and be accorded immunity. The intern, although equally as essential to the operation of a hospital as the administrators, was, because of his inexperience, closely controlled, supervised, and directed by his employer. Indeed, an intern is prohibited by statute, Code § 54–276.7, from rendering medical services except under the supervision of a licensed member of the hospital staff to whom he is responsible and accountable at all times. The State's interest and the circumstances and conditions of the intern's employment require that he be afforded immunity.

*James v. Jane, supra* 221 Va. at 53–54, 267 S.E.2d 108. Clearly, this language compels the finding that the *James* case has neither abrogated nor modified the holding in *Lawhorne* that an intern at the University of Virginia Medical Center is clothed with immunity. Indeed, Justice Cochran, in his concurring opinion in the *James* case, stated that the majority opinion attempted,

... to distinguish between full-time members of the faculty of the University of Virginia Medical School, held not to be immune from liability for negligence in the present case, and the hospital administrators and the surgical intern of the same institution, held to be immune in *Lawhorne.*

*James v. Jane, supra* 221 Va. at 55, 267 S.E.2d 108. Accordingly, this Court harbors no doubt that the Virginia Supreme Court's opinion in *James v. Jane, supra,* left intact their holding in *Lawhorne v. Harlan, supra.*

For all these reasons an appropriate Order will this day issue granting the defendant's motion for summary judgment.