Richard ARMENDAREZ, Rachel Armendarez, Individually and as Next Friend of Allen Armendarez, Appellants,

v.

TARRANT COUNTY HOSPITAL DISTRICT, Dr. Robin Schlaudt, Dr. Arthur Garcia, and Dr. Anna Lozano, Appellees.

No. 2–88–075–CV.

Court of Appeals of Texas, Fort Worth.

July 26, 1989.

On Rehearing Dec. 13, 1989.

Priddy & Chovanec, Laurance L. Priddy, Jose, Henry & Brantley, Michael J. Henry, Fort Worth, for appellants.

Tim Curry, Crim. Dist. Atty., Randall D. Moore, Asst., Fort Worth, for Tarrant County Hosp. Dist.

Shannon, Gracey, Ratliff & Miller, D. Michael Wallach, Anne Gardner, for Schlaudt, Garcia and Lozano.

Before HILL, FARRIS and MEYERS, JJ.

## OPINION

HILL, Justice.

Richard and Rachel Armendarez, individually and as next friend of their son Allen, appeal from a summary judgment that they take nothing in their medical malpractice action brought against the Tarrant County Hospital District and Drs. Robin Schlaudt, Arthur Garcia, and Anna Lozano as a result of the defendants' alleged negligence in connection with Allen's birth. In twelve points of error, the Armendarezes contend that governmental immunity, one of the doctrines relied upon by the defendants in their motions for summary judgment, was waived because the alleged negligent actions of the defendants involved the use of tangible personal property, which would create a waiver of the doctrine under the provisions of TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.021 (Vernon 1986); that the defendant doctors are not protected by governmental or official immunity; that governmental immunity violates good public policy and should be abolished; and that the granting of such immunity, or the limitation of liability based upon such immunity, violates the Equal Protection, Due Process, and the Privileges and Immunities Clauses of the United States Constitution and article I, sections 3, 3a, 13, and 19 of the Texas Constitution.

We reverse and remand for trial, because we find that the trial court erred in granting summary judgment in favor of the Hospital District, since the summary judgment evidence raises a fact issue as to whether Allen's injury was negligently caused by the use of tangible personal property, a vacuum extractor, thereby establishing a waiver of governmental immunity under the provisions of TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.021 (Vernon 1986). We further find that the trial court erred by granting summary judgment in favor of

Drs. Schlaudt, Garcia, and Lozano, because the summary judgment proof failed to establish that they were entitled to official immunity as a matter of law, since there was no summary judgment proof that their duties are uniquely different from those engaged in the same duties in the private sector or that they were exercising a function unique to government. We also decline to abolish the doctrine of governmental immunity or to find that the application of the doctrine or the limitation of liability under the Texas Tort Claims Act, as it relates to the Hospital District, violates the appellants' rights under either the United States or Texas Constitutions. In view of our rulings on the remaining points of error, we have determined that it is unnecessary to consider points of error complaining of limitations as to the liability of the physicians.

In points of error numbers two, three, and four, the appellants urge that the trial court erred in granting the Hospital District's motion for summary judgment because the treatment of Allen and Rachel Armendarez involved the use of tangible personal property, including the failure to properly interpret prenatal and delivery records, and failure to properly follow hospital procedure manuals, as well as the use of vacuum extraction equipment. They contend that since the use of tangible personal property was involved, that governmental immunity was waived under the provisions of The Texas Tort Claims Act, section 101.021 of the Texas Civil Practice and Remedies Code.

The Hospital District's motion for summary judgment was grounded on its claim that the appellants failed to state a cause of action coming within an exception to its claim of governmental immunity, and failed to raise any genuine issue of material fact. The appellants urged that governmental immunity was waived because the treatment of mother and child during labor involved, as alleged by them, the misuse of tangible personal property such as prenatal records and vacuum extraction equipment. The appellants alleged that each of the defendants was negligent in several respects, including misinterpretation of pre-

natal records generated as part of prenatal care and hospital records generated during the birth process, and in utilizing vacuum extraction equipment instead of performing a delivery by cesarean section, and that each or all of the acts of negligence proximately caused the injuries and damages of which they complain.

Ordinarily, a defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Griffin v. Rowden*, 654 S.W.2d 435, 435–36 (Tex.1983). However, in this case the Hospital District relies on the affirmative defense of governmental immunity. It is undisputed that the Hospital District is a governmental entity to which the doctrine of governmental immunity would be applicable. In a case in which an affirmative defense is established, the burden of raising a disputed fact issue shifts to the non-movant. *Palmer v. Enserch Corp.*, 728 S.W.2d 431 (Tex.App. —Austin 1987, writ ref'd n.r.e.); Hittner and Liberato, *Summary Judgments in Texas*, 20 St. Mary's L.J. 243, 272 (1989). We therefore examine the summary judgment evidence to see if it establishes that there are any disputed fact issues.

The appellants assert that the summary judgment evidence shows that there are fact issues with regard to whether their claim comes within the waiver of governmental immunity provided in section 101.-021 of the Texas Civil Practice and Remedies Code. That section provides that a governmental unit in the state is liable for personal injury and death proximately caused by the wrongful acts or omissions or negligence of employees acting within the scope of employment, when the personal injury or death is caused by a condition or use of tangible personal or real property, if the governmental unit would be liable under Texas law as a private person.

Among the allegations of negligence, the appellants alleged that the defendants were negligent and fell below the standard of care "c. in misinterpretation of the prenatal records generated as part of the prenatal care of Rachel Armendarez, with the

result that they failed to recognize that Allen Armendarez was too large to be born through normal delivery; d. in misinterpretation of the hospital records being generated during the birth process including fetal monitoring records and prenatal records, with the result that they failed to recognize that fetal pelvic disproportion existed so that birth through normal delivery should not be attempted; e. in utilizing vacuum extraction equipment in order to deliver the head of Allen Armendarez as opposed to performing a cesarean section; f. in misusing and misinterpreting hospital procedure manuals indicating that additional testing leading to a cesarean section should have been utilized." The petition alleged these acts of negligence were proximate causes of Allen's injuries.

■ While the summary judgment evidence may indicate that the appellees should have performed a cesarean section rather than a vaginal delivery, there is no summary judgment evidence that indicates that any of the appellees misinterpreted any records in any way. In his deposition testimony, Dr. Arthur Lester, the appellants' expert, testified that under the circumstances, which included a young mother, a large baby, a mother who had gained too much weight during pregnancy, and a two-hour period during labor without further dilation of the mother, that the performance of a vaginal delivery, as opposed to a cesarean delivery, was not good medical practice. He said that the hospital records indicated that the baby was large and that the mother had gained too much weight during pregnancy. The appellants do not refer us to any summary judgment evidence that any of the appellees had misinterpreted the records so as to be unaware of those facts. In fact the appellants refer us to evidence that shows Dr. Schlaudt was aware of the mother's excessive weight gain, and that he had consulted with another physician about it. They also mention that Dr. Schlaudt wrote many of the records. We find that the appellants failed to meet their burden of raising a disputed fact issue as to any prenatal or other hospital records.

With respect to the appellants' allegations as to the misuse or misinterpretation of the hospital procedure manuals, the appellants fail to refer us to any summary judgment evidence which shows that any of the appellees made any use of the hospital procedure manuals. As the appellants acknowledge, a nonuse of personal property does not trigger a waiver of immunity under the Tort Claims Act. *See Seiler v. Guadalupe Valley Hospital*, 709 S.W.2d 37, 38 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). We therefore find that the appellants have failed to meet their burden of raising a disputed fact issue as to the misuse or misinterpretation of the hospital procedure manuals. We overrule point of error number three.

The summary judgment evidence indicates that the physicians at the hospital delivered Allen vaginally, using a vacuum extractor, equipment used in lieu of forceps, to help bring out the child's head. The use of the extractor resulted in a bruise to the child's head. After the extractor had been used, the doctors experienced difficulty in getting the child delivered because a shoulder was lodged within the mother. As a further complication, his umbilical cord became severed, necessitating an immediate delivery so that the child could breathe. The physician by hand exerted pressure on the child's head and brought him out. There is evidence that the child at that time sustained what is called a brachial plexus injury, an injury to his shoulder with long-term residual effects.

■ The appellants presented summary judgment evidence that, due to certain complication risk factors, such as the age and weight of the mother and the size of the baby, the proper standard of care required a cesarean section instead of a vaginal delivery, because of the risk of an injury such as the one which occurred. As previously noted, the vacuum extractor was used to accomplish the vaginal delivery. According to the summary judgment evidence, had a vaginal delivery been appropriate, the use of the extractor would have been properly within the standard of care. The

extractor was not defective. The nature of the injury was such that it would not have occurred had a cesarean section been used. There was summary judgment evidence that the decision to perform a cesarean section should have been made initially, but failing that it should have been made during labor, and, failing that, it should have been made prior to delivery, which is when the extractor was used. There is some summary judgment evidence that the injury was proximately caused by the use of the vacuum extractor in the sense that the use of the vacuum extractor moved the child from a position at which a cesarean section could have been performed to a position where it could no longer reasonably be performed. The appellants' contention is that the shoulder injury was proximately caused by the improper use of the vacuum extraction equipment to perform a vaginal delivery, improper in the sense that it should never have been used at all since a cesarean section should have been performed instead. We hold this summary judgment evidence is sufficient to raise a fact issue as to whether Allen's injuries were proximately caused by the negligent use of a vacuum extractor to perform a vaginal delivery, as opposed to the performance of a cesarean section. We sustain points of error numbers two and four.

The appellants contend in point of error number five that the trial court erred in granting summary judgment for Drs. Schlaudt, Garcia, and Lozano since they are not immune from liability under the terms of TEX.CIV.PRAC. & REM.CODE ANN. sec. 101.106 (Vernon 1986). This section states that "A judgment in an action or a settlement of a claim under this chapter bars any action involving the same subject matter by the claimant against the employee of the governmental unit whose act or omission gave rise to the claim." *Id.* In view of our determination of points of error numbers two and four, we must also sustain point of error number five.

In point of error number six, the appellants maintain that the trial court erred in granting summary judgment for the individual doctors since the doctrine of official immunity is not applicable to doctors in connection with their care of patients.

It has been held in Texas that government employees are entitled to official immunity if their position has a quasi-judicial status and if the employee is acting in good faith within his or her authority as a quasi-judicial employee. *Austin v. Hale,* 711 S.W.2d 64, 66 (Tex.App.—Waco 1986, no writ). *See also Baker v. Story,* 621 S.W.2d 639, 644 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.). These same decisions state that quasi-judicial actions are those acts which are discretionary in character and require personal deliberation, decision, and judgment. *Austin,* 711 S.W.2d at 67; *Baker,* 621 S.W.2d at 645. Both of these opinions distinguish between such quasi-judicial actions, which enjoy immunity, and ministerial actions, which do not. They state that ministerial actions require only obedience to orders, or the performance of a duty as to which the actor is left no choice. *Austin,* 711 S.W.2d at 67; *Baker,* 621 S.W.2d at 645. These definitions and distinctions were taken from W. Prosser, *The Law of Torts,* sec. 132, p. 990 (4th ed. 1971). It is interesting to note that *Baker* includes the quote from that text which stated that these distinctions are for all practical purposes unworkable because almost any act involves some discretion in the manner of its performance. *Baker,* 621 S.W.2d at 645.

The underlying basis for the above distinctions is the purpose for official immunity. The United States Supreme Court has stated that the purpose of the immunity is so that government officials might be free to exercise their duties without fear of damage suits—suits which would consume their time and energy and the threat of which might appreciably inhibit the fearless, vigorous, and effective administration of policies of government. *See Barr v. Matteo,* 360 U.S. 564, 571–73, 79 S.Ct. 1335, 1339–41, 3 L.Ed.2d 1434, 1441–42 (1959).

Texas courts have not previously addressed the question of whether medical doctors are entitled to official immunity. Generally, the courts of our sister states

have held that medical doctors employed by government do not enjoy the protection of official immunity, even though their actions are discretionary. *See Watson v. St. Annes Hospital,* 68 Ill.App.3d 1048, 25 Ill. Dec. 411, 386 N.E.2d 885 (1979); *Durflinger v. Artiles,* 234 Kan. 484, 673 P.2d 86, 94 (1983); *Davis v. Lhim,* 124 Mich.App. 291, 335 N.W.2d 481 (1983); *Cooper v. Bowers,* 706 S.W.2d 542, 543 (Mo.App.1986); *Comley v. Emanuel Luth. Charity Bd.,* 35 Or.App. 465, 582 P.2d 443, 452 (1978); *Protic v. Castle Co.,* 132 Wis.2d 364, 392 N.W.2d 119 (1986). At least one federal circuit has reached the same result. *Henderson v. Bluemink,* 511 F.2d 399 (D.C.Cir.1974). Basically, these courts have concluded that medical doctors in medical malpractice cases are not entitled to the protection of official immunity because the basic purpose of the doctrine is not served since the duties the doctors exercise are not uniquely governmental in nature, and because the threat of a lawsuit would not deter a doctor in the fearless and vigorous exercise of medical discretion any more than it would a doctor in private practice.

The Virginia Supreme Court held that doctors treating patients at state hospitals did not enjoy such immunity because the state's interest in the cost of medical malpractice insurance in the event the immunity were denied was not such a compelling interest so as to justify the denial of a patient the right to assert a claim against a physician for negligent treatment. *James v. Jane,* 221 Va. 43, 267 S.E.2d 108, 114 (1980). A Georgia Court of Appeals inexplicably held, in the case of a psychiatrist at a state hospital who was being sued for the wrongful discharge of a psychiatric patient, that the physician enjoyed such immunity in a suit by the patient's family, but did not enjoy such immunity in a suit brought by the patient. *Swofford v. Cooper,* 184 Ga. App. 50, 360 S.E.2d 624 (1987). In New Hampshire, the supreme court held that the administration of testing fluids, the maintenance of a laboratory and its lab supplies, and the preparation for a routine eye examination did not call for deliberation, discretion, or a policy choice, so that those actions did not enjoy official immunity. The court declined to reach the question of whether a doctor working for the state would ever be engaged in acts which would enjoy official immunity. *Tilton v. Dougherty,* 126 N.H. 294, 493 A.2d 442 (1985).

In its Fifth Edition, Prosser and Keeton on Torts simply states that "In the absence of statute the officer or employee is not immune from liability ... for negligent medical treatment." P. Keeton, *Prosser and Keeton on Torts,* sec. 132, at 1062 (5th ed. 1984).

The Supreme Court of Mississippi has held that physicians are entitled to official immunity because the threat of liability might deter doctors from entering government service and because immunity acts as a powerful incentive to some doctors to serve in state charitable institutions, which makes medical care available to many who might not be able to afford medical care in private facilities. *Marshall v. Chawla,* 520 So.2d 1374, 1377 (Miss.1988). One federal circuit held that doctors enjoyed the immunity, relying on a literal application of the discretionary-ministerial function rule, based upon the fact that a physician exercises discretion. *Estate of Burks v. Ross,* 438 F.2d 230 (6th Cir.1971). Another federal circuit upheld the physician's immunity without discussion. *Bates v. Carlow,* 430 F.2d 1331, 1332 (10th Cir.1970).

Having reviewed all of these authorities, we hold that a medical doctor is not entitled to protection as a quasi-judicial officer, even though his or her duties literally involve the exercise of discretion, where the doctor's duties are not uniquely different from those engaged in the same duties in the private sector or where no function unique to government is being exercised. We so hold because the purpose for official immunity is not served when an employee has the same duty and therefore no greater risk of liability than an employee performing the same duties in the private sector.

In this case, Dr. Schlaudt gave Rachel prenatal care and was one of two doctors who participated in the delivery of Allen; Dr. Lozano examined Rachel prior to deliv-

ery; and Dr. Garcia assisted Dr. Schlaudt in the delivery. All three doctors were employees of John Peter Smith Hospital, a public hospital operated by the Tarrant County Hospital District, a political subdivision of the State. Allen apparently suffered injury during the course of delivery. Allen was large at birth, weighing approximately eleven pounds at birth. Rachel was sixteen years of age at the time she first came in for prenatal care.

In a summary judgment case, we may affirm only if the record establishes that the movant has conclusively proved all essential elements of his cause of action or defense as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671, 678 (Tex.1979). There is no summary judgment proof to the effect that the duties of the doctors constituted a function unique to government or that they were uniquely different from the duties of those practicing medicine in the private sector. The summary judgment proof therefore fails to establish as a matter of law that Drs. Schlaudt, Lozano, and Garcia are entitled to official immunity.

We do not regard our opinion in this case as a departure from the established Texas rules affording the benefits of the doctrine to those who exercise quasi-judicial discretion, only a clarification that in keeping with the underlying basis of the doctrine, the discretion which must be exercised by the governmental employee or official seeking official immunity must be uniquely governmental in nature. This specific question has not previously been addressed by the Texas courts.

Since the summary judgment proof fails to establish that Drs. Schlaudt, Lozano, and Garcia are entitled to official immunity as a matter of law, we sustain point of error number six.

Appellants contend in point of error number one that the trial court erred in granting summary judgment because there are material fact issues to be determined. In view of our determination of the remaining points of error, we sustain point of error number one.

In points of error numbers seven, eight, and nine, the appellants maintain that the doctrine of government immunity should be abolished, and that the application of such doctrine or the limitation of liability under the Texas Tort Claims Act, as to the Hospital District, violates their rights under various provisions of the Constitution of the United States and of the State of Texas, including the Equal Protection, Due Process, and Privileges and Immunities Clauses of the United States Constitution, and article I, sections 3, 3a, 13, and 19 of the Texas Constitution. For the reasons stated in our previous opinion of *Tarrant County Hospital District v. Ray*, 712 S.W.2d 271, 273 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.), we overrule points of error numbers seven, eight, and nine.

In points of error numbers ten, eleven, and twelve the appellants assert that the trial court erred in granting summary judgment, relying on their contentions that sections 101.106 and 101.023 are unconstitutional under various articles and sections of the United States and Texas Constitutions. In view of our determination with respect to the remaining points of error, we need not consider these points of error.

The judgment is reversed and the cause remanded.

MEYERS, J., dissents.

MEYERS, Justice, dissenting.

I respectfully dissent. The majority has misinterpreted the Texas Tort Claims Act. The Tort Claims Act has affected a limited waiver of governmental immunity in three specific instances: (1) use of motor vehicles; (2) premise defects; and (3) use or condition of tangible personal or real property. TEX.CIV.PRAC. & REM.CODE ANN. secs. 101.021 and 101.022 (Vernon 1986).

In this case, the Armendarezes rely on a use of tangible personal property to prove a waiver of governmental immunity. According to the majority, the fact that a vacuum extractor was used to move the child from a position at which a cesarean section could have been performed to a

position where it could no longer be performed created a waiver of governmental immunity. However, reliance on the vacuum extractor to prove a waiver of immunity is inappropriate.

There must be a genuine issue of *causation* between Allen's injuries and the use of tangible personal property in order to affect a waiver of governmental immunity. *Russell v. Texas Dep't of Human Resources*, 746 S.W.2d 510, 513 (Tex.App.— Texarkana 1988, writ denied) and cases cited therein; TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.021(2). Only the bruise to Allen's head was arguably caused by the vacuum extractor; the brachial plexus injury was not. Movement of the child, aided by the use of the vacuum extractor, did not *cause* the shoulder injury. The birth of the child through a narrow birth canal caused the injury to the child's shoulder. To say the vacuum extractor caused the shoulder injury is as baseless as saying the stabbing of a child who happened to be on a school bus was caused by the use of a motor vehicle merely by virtue of the child's presence on the bus. The Ninth District Court of Appeals rejected such a contention in *Garza v. McAllen Independent School District*, 613 S.W.2d 526 (Tex. Civ.App.—Beaumont 1981, writ ref'd n.r. e.), in which the court stated that the stabbing of a youngster on a school bus was not caused by the use of a motor vehicle, but by the use of a knife. *Id.* at 528. In this case, the injury about which the Armendarezes complain was not caused by the vacuum extractor, but by the narrow birth canal. As other courts have realized, governmental immunity is not waived every time a government employee and a piece of tangible personal property are combined. *See, e.g., Velasquez v. Jamar*, 584 S.W.2d 729, 732 (Tex.Civ.App.—Tyler 1979, no writ) and cases cited therein. The trial court correctly granted summary judgment because there was no summary judgment proof of causation and I would affirm summary judgment on behalf of the Hospital District.

Summary judgment was also properly granted on behalf of the individual doctors as the doctors enjoy official immunity. Al-though the majority correctly recognizes Texas law holds government employees are entitled to official immunity if their position has a quasi-judicial status and the employee acts in good faith within the scope of his authority, *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex.App.—Waco 1986, no writ) and cases cited therein, they do not apply official immunity in this case.

Instead, the majority disregards all Texas authority and finds public employees are not entitled to official immunity if their duties "are not uniquely different from those engaged in the same duties in the private sector or where no function unique to government is being exercised." Presumably, the majority reaches this conclusion based on opinions from other jurisdictions holding likewise. While it is not necessarily wrong to follow the law of other jurisdictions, the majority disregards all Texas law to do so in this case.

Under Texas law, there is a simple analysis which must be made in order to determine whether a public employee is entitled to official immunity: (1) can the employee's actions be classified as quasi-judicial; i.e., do his actions require personal deliberation, decision and judgment; (2) did the employee act in good faith; and (3) were the actions taken within the scope of the employee's authority. If the answer to each of these questions is yes, then the employee is entitled to official immunity *as a matter of law*. *See Russell*, 746 S.W.2d at 513; *Austin v. Hale*, 711 S.W.2d at 66; *Augustine v. Nusom*, 671 S.W.2d 112, 115 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Baker v. Story*, 621 S.W.2d 639, 644 (Tex.App.—San Antonio 1981, writ ref'd n.r.e.); *Richardson v. Thompson*, 390 S.W.2d 830, 834 (Tex.Civ.App.—Dallas 1965, writ ref'd n.r.e.); *Torres v. Owens*, 380 S.W.2d 30, 33 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.); *Morris v. Nowotny*, 323 S.W.2d 301, 311 (Tex.Civ. App.—Austin, writ ref'd n.r.e.), *cert. denied*, 361 U.S. 889, 80 S.Ct. 164, 4 L.Ed.2d 124 (1959). It does not matter whether the public employee is a doctor, police officer, or social worker; the analysis is the same. The fact that no other Texas court has

addressed the application of official immunity to doctors in particular is immaterial. We need only answer the three questions enumerated above in order to determine whether to apply official immunity. In this case, the answer to each question was yes; thus, the doctors are entitled to official immunity.

Texas has an established body of law relating to official immunity which courts should follow. Because the majority refuses to apply official immunity to the doctors, and finds summary judgment was improperly granted on behalf of the hospital even though there was no proof of causation, I dissent.

## OPINION ON REHEARING

HILL, Justice.

Upon their motion for rehearing, Doctors Robin Schlaudt, Arthur Garcia, and Anna Lozano contend in seven points of error that this court erred by reversing the summary judgment that the trial court granted them. The Tarrant County Hospital District urges in three points of error on rehearing that we erred by reversing the summary judgment in favor of it and the physicians. We overrule all points of error and deny both motions for rehearing.

We shall first consider the points of error of the physician appellees. In their points of error numbers one, two, and three on rehearing, they urge that we erred in holding that they are not protected by the doctrine of official immunity since they have failed to present summary judgment evidence establishing as a matter of law that their duties were uniquely governmental in nature.

As we understand their contentions, they assert that we erred by disregarding established Texas law and by relying on a few, isolated cases from other jurisdictions. They also argue that the evidence did show that their duties are uniquely governmental in nature.

We first consider the appellees' argument that we are disregarding established Texas law. The underlying basis for our opinion was that the purpose of official immunity, which is to allow public officials to perform their duties free of the threat of lawsuits, is not served when the duties of a public employee are basically the same as those performing the same function in the private sector, and those duties are not uniquely governmental in nature. We reach this conclusion because in such a situation the threat of a lawsuit would not deter the public employee in the exercise of his or her duties more than it would someone performing the same duties in the private sector.

If our conclusion is correct, then the appellees are contending that Texas law has always sought to apply the doctrine of official immunity to those whose duties make the application of the doctrine inconsistent with the underlying purpose of the doctrine. We have not found any Texas case which has held that the doctrine of official immunity is to be applied to an employee whose duties are discretionary, even if the nature of his duties make the application of the doctrine inconsistent with its basic underlying purpose. The appellees have yet to present one case, and we are not aware of any, that applies the doctrine to an employee whose duties are not uniquely governmental in nature. Even if there is such a case, we would think it unlikely that the issue presented here was raised.

We note that on rehearing the appellees present us with several cases in which they contend the doctrine was applied to those whose duties are not uniquely governmental in nature. The cases the appellees present are *Torres v. Owens*, 380 S.W.2d 30, 33–34 (Tex.Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.); *Dallas County Flood Control District v. Fowler*, 280 S.W.2d 336 (Tex.Civ.App.—Waco 1955, writ ref'd n.r.e.); and *Wyse v. Department of Public Safety*, 733 S.W.2d 224 (Tex.App.—Waco 1986, writ ref'd n.r.e.). The *Torres* case involved commissioners of a navigation district, while the *Dallas County Flood Control District* case involved the directors of that district. The *Wyse* case involved a district attorney and law enforcement officers. All of those positions are positions which we would hold to be

uniquely governmental. We also note that there is no indication that anyone contended in any of those cases that official immunity should not apply to those whose duties made the underlying basis for the immunity inapplicable.

The appellees correctly point out an error in our original research in connection with the case of *Davis v. Lhim*, 124 Mich.App. 291, 335 N.W.2d 481 (1983). Subsequent to that decision, the Michigan Supreme Court decided the case of *Ross v. Consumers Power Co.*, 420 Mich. 567, 363 N.W.2d 641 (1984). In that case, it was decided that a public employee or an official's decision to engage in a particular activity and how best to carry it out is a discretionary activity, whereas the actual execution of the decision is a ministerial act, even though some discretion might be involved in the process of carrying out the original decision. Rather than receive the appeal in *Davis*, the Supreme Court remanded the case back to the Court of Appeals for reconsideration in view of *Ross*. *Davis v. Lhim*, 422 Mich. 875, 366 N.W.2d 7 (1985). In its second opinion, the Court of Appeals reached the same result but changed the rationale of its decision denying immunity from that upon which we rely to the rationale that the doctor's decision was ministerial because, as a professional, he did not have the discretion to depart from the appropriate standard of care. *Davis v. Lhim*, 147 Mich.App. 8, 382 N.W.2d 195 (1985). On an appeal in which the decision was considered along with several others, the Supreme Court reversed the opinion of the Court of Appeals, holding that the Court of Appeals was in error because their opinion confused the separate inquiries of immunity and negligence. *Canon v. Thumudo*, 430 Mich. 326, 422 N.W.2d 688 (1988).

We decline to adopt the holding of the Michigan Supreme Court because application of that rationale to the facts before us would result in an application of the doctrine of official immunity in a manner inconsistent with the basic purpose of the doctrine.

The appellees argue that our Kansas case is distinguishable because it is based upon a statute. A close examination of the opinion reveals that it is also based upon the common law. *Durflinger v. Artiles*, 234 Kan. 484, 673 P.2d 86, 94 (1983).

The appellees contend that our Illinois and Wisconsin cases are distinguishable because those states do not treat the operations of a public hospital as governmental functions. They rely on the cases of *LeRose v. City of Zion/Police Depart.*, 696 F.Supp. 1222, 1230 (N.D.Ill.1988); and *Gordon v. Milwaukee County*, 125 Wis.2d 62, 370 N.W.2d 803 (1985). We note that these two cases do not hold that those states do not treat the operations of a public hospital as governmental functions. Even if they did, in seeking to make these distinctions, the appellees confuse the difference between the governmental and proprietary function distinctions in questions of sovereign immunity with the official immunity requirement that the duties of the public official or employee must be uniquely governmental in nature. A public hospital might be termed as a governmental function for the purpose of sovereign immunity, as opposed to a proprietary function, even though its employees, if their duties are not uniquely governmental, might not be entitled to the invocation of the doctrine of official immunity.

The appellees contend that there are a growing number of cases from other jurisdictions holding that physicians employed by a governmental hospital are engaged in "discretionary" as opposed to "ministerial" conduct in rendering medical care. They refer us to the cases of *Sorey v. Kellett*, 849 F.2d 960 (5th Cir.1988); *Currie v. United States*, 836 F.2d 209 (4th Cir.1987); *Pangburn v. Saad*, 73 N.C.App. 336, 326 S.E.2d 365 (1985); *Marshall v. Chawla*, 520 So.2d 1374 (Miss.1988); and *Hall v. Roberts*, 548 F.Supp. 498 (W.D.Va.1982).

*Sorey v. Kellett* and *Marshall v. Chawla* are both Mississippi cases. We acknowledged in our original opinion that the Mississippi Supreme Court's opinion in *Marshall v. Chawla* was inconsistent with the result we have reached. *Currie v. United States* and *Pangburn v. Saad* are both North Carolina cases. In *Pangburn*, the

court held that a staff psychiatrist at the state hospital was immune for ordinary negligence in releasing a patient. The decision was based on a statute which extended such qualified immunity. The court held that the statute did not provide immunity for gross negligence or intentional torts. The opinion of the Fourth Circuit in *Currie* was based on the statute and the opinion in *Pangburn*. In *Hall v. Roberts*, a Virginia case, the court held that an intern could be entitled to immunity, particularly where the intern was closely supervised, could not choose his patients, and was not paid by them. In its discussion, the court distinguished the case from the case of *James v. Jane*, 221 Va. 43, 267 S.E.2d 108 (1980), the case which we cited in our original opinion. In *James*, the Virginia Supreme Court denied official immunity to several doctors in a medical malpractice action. Except for the Mississippi cases, we do not view any of these cases as inconsistent with the doctrine as we stated it in our original opinion. We believe that although expressed in other terms, the Federal Court in *Hall* found that the nature of the intern's duties were uniquely governmental.

The appellees insist that the record shows that their duties are uniquely governmental, since it shows that they were resident physicians who were being supervised by the teaching staff of the hospital, and because they were treating the needy and indigent of Tarrant County. The record does not reflect any difference between a residency in a governmental hospital, as opposed to a private one, with respect to an increased risk of liability. The record does not reflect any difference between the treatment of indigent patients, as compared with the treatment of those who have the means to pay, with respect to an increased risk of liability. The appellees may ultimately prove to be correct in their assertion that their duties are uniquely governmental. It may be that the indigent have greater health problems than those who are not indigent, and that those who treat them in public hospitals have a greater risk of liability, as compared to those in the private sector, who might have the choice of not accepting them as patients.

If that be so, it is not reflected in this record. Therefore, we overrule points of error numbers one through three on rehearing.

In point of error number four on rehearing, the appellee physicians urge that by requiring the appellees as physicians to establish that their duties are uniquely governmental before they are entitled to official immunity, we have created an arbitrary and unreasonable classification constituting a denial of due process, a denial of equal protection of the law and impairment of privileges and immunities under the Texas Constitution, article I, sections 3, 13, and 19, and the Bill of Rights, and amendments V and XIV of the United States Constitution. This entire argument appears to be based on the premise that we have established a rule that applies to physicians and not to others similarly situated. In fact, nothing contained in the original opinion indicates that the rule as set forth applies only to physicians. We have applied the rule here to physicians, because this case involves physicians. The rule would apply equally well to others whose duties are not uniquely governmental in nature.

The appellee physicians contend that we are depriving them of a defense retroactively. First, we have not deprived them of a defense; we have only held that the appellees have not established as a matter of law that they are entitled to such a defense. Second, if the duties of the appellees are such that the underlying purpose of official immunity is not served by the application of the immunity to them, then we would assert that the immunity was never intended to be applicable to them and that our saying so does not constitute any change in the law. We overrule point of error number four on rehearing.

The appellee physicians assert in points of error numbers five and six that we erred in holding that there was an issue of material fact raised in connection with the waiver of sovereign immunity, because there was no summary judgment evidence that use of the vacuum extractor caused the infant plaintiff's damages, and that we erred in holding that the action against the

appellees was not barred by section 101.106 of the Texas Civil Practice and Remedies Code, because the Hospital District was entitled to judgment as a matter of law. We find these issues to be adequately addressed in our original opinion. Thus, we overrule points of error numbers five and six on rehearing.

Finally, the appellee physicians insist in point of error number seven on rehearing that we erred in holding that Dr. Lozano was not entitled to summary judgment since the evidence conclusively established that Dr. Lozano did not participate in the use of the vacuum extractor or delivery of the child. Dr. Lozano did not urge this as a basis for summary judgment in her motion presented to the trial court. Therefore, we cannot affirm the summary judgment on a ground not presented in the original motion. TEX.R.CIV.P. 166a(d) and *Roling v. McGeorge*, 645 S.W.2d 886, 888 (Tex.App.—Tyler 1983, no writ). *See also Casso v. Brand*, 776 S.W.2d 551 (Tex.1989). Dr. Lozano also bases this point of error on a supposition that the summary judgment in favor of the hospital district with respect to hospital records and procedure manuals is still outstanding. Although we did not sustain appellant's points of error as to those allegations, we reversed the summary judgment in favor of the hospital based on other grounds. In doing so, we did not sever out the claims concerning hospital records and procedure manuals, and sustain the summary judgment with respect to them. Therefore, we overrule point of error number seven on rehearing.

The Hospital District presents three points of error on rehearing in which it contends that we erred in reversing the summary judgments of the District and of the physicians because (1) the summary judgment proof established as a matter of law that there was no use or condition of tangible property proximately causing Allen's alleged injuries; (2) the physicians are entitled to summary judgment if the Hospital District is entitled to summary judgment, based on TEX.CIV.PRAC. & REM. CODE ANN. sec. 101.106 (Vernon 1986), and TEX.REV.CIV.STAT.ANN. art. 4494t, sec. 6 (Vernon Supp.1989); and (3) the phy-

sicians are entitled to rely on the doctrine of official immunity. We find that these arguments have been adequately addressed in our original opinion and in this opinion on rehearing. We therefore overrule all of the Hospital District's points of error on rehearing.

We deny the motions for rehearing of all appellees.