

# KEN PAXTON
ATTORNEY GENERAL OF TEXAS

August 10, 2015

The Honorable Sharen Wilson
Tarrant County Criminal District Attorney
401 West Belknap
Fort Worth, Texas 76196-0201

Opinion No. KP-0029

Re: Authority of a county hospital district to create a charitable organization under section 281.0565 of the Health and Safety Code and related governance questions (RQ-0008-KP)

Dear Ms. Wilson:

You ask three questions regarding the authority of the Tarrant County Hospital District (the "District").[1] The District informs us that your inquiry pertains to a recent partnership between the District and the University of North Texas Health Science Center ("UNTHSC") to create a joint physician group.[2]

You first ask whether section 281.0565 of the Health and Safety Code authorizes the District "to create a charitable organization to facilitate the management of a district health care service and fund it with tax-payers revenue." Request Letter at 1. Subsection 281.0565(b) of the Health and Safety Code authorizes a hospital district to "create a charitable organization to facilitate the management of a district health care program by providing or arranging health care services, developing resources for health care services, or providing ancillary support services for the district." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(b) (West 2010); *see also id.* § 281.0565(a) (defining "charitable organization" in relation to the Internal Revenue Code). Thus, assuming the physician group meets the definition of a "charitable organization" under the statute and the physician group facilitates the management of a District health care program in one of the ways articulated therein, the District is authorized to create it.[3]

The District states that its "funds were utilized to assist in the organization and creation of" the physician group. Brief at 4. As a political subdivision, the District must abide by certain constitutional limitations concerning the expenditure of funds for private entities. *Armendarez v.*

---

[1]*See* Letter from Honorable Sharen Wilson, Tarrant Cnty. Crim. Dist. Att'y, to Honorable Ken Paxton, Tex. Att'y Gen. at 1–2 (Jan. 29, 2015), https://www.texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter").

[2]*See* Brief from Neal Adams, Gen. Counsel, Tarrant Cnty. Hosp. Dist. at 2–3 (Feb. 27, 2015) (on file with the Op. Comm.) ("Brief").

[3]We do not opine on whether any particular charitable organization is properly formed pursuant to subsection 281.0565(b) of the Health and Safety Code.

*Tarrant Cnty. Hosp. Dist.*, 781 S.W.2d 301, 307 (Tex. App.—Fort Worth 1989, writ denied) (describing the District as "a political subdivision of the State"). Specifically, article III, section 52(a) of the Texas Constitution prohibits the Legislature from authorizing "any . . . political . . . subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . ." TEX. CONST. art. III, § 52(a). The Texas Supreme Court has articulated a three-part test to determine whether a monetary transfer satisfies the limitations of article III, section 52(a): The entity making the transfer must (1) ensure that the transfer is to "accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit." *Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002). This office previously applied the three-part test to the District in the context of an expenditure for a physician group formed under subsection 281.0565(b). Tex. Att'y Gen. Op. No. GA-0188 (2004) at 4. GA-0188 advised that the District would "avoid violating article III, section 52" if it determined in good faith that the expenditure would serve a public purpose, and it placed "sufficient controls on the transaction, contractual or otherwise," to ensure that the public purpose would be carried out. *Id.*

It is for the District to determine in the first instance whether the funds utilized to assist in the formation of a physician group serve a District public purpose. *See* Tex. Att'y Gen. Op. No. GA-0078 (2003) at 4. The District has indicated that the bylaws of the physician group reserve authority to the District and UNTHSC "to develop, approve, adopt, and modify [the group's] capital and operating budgets, strategic plans, business plans, mission plans, and other matters related to expenditures" and that the District "must approve any development, adoption, or modification of [the group's] capital and operating budgets." Brief at 5. These contractual provisions are similar to ones in the past that we have determined could allow a governmental body to provide the requisite control. Tex. Att'y Gen. Op. No. GA-0188 (2004) at 4.

Your second question is whether the District may "transfer 50% or any portion of the Corporation's managerial and oversight authority to a third-party entity, who isn't elected by the voters of Tarrant County or appointed by the Board of Managers of the [District] or appointed by the Commissioners Court of Tarrant County." Request Letter at 1–2. The District advises that in the corporate structure of the physician group, "the District and UNTHSC are the sole members." Brief at 3. It appears your concern is that the District would not have exclusive oversight of the physician group. The Legislature, however, has expressly authorized a hospital district, either "directly or through a nonprofit corporation created or formed by the district" to "contract, collaborate, or enter into a joint venture with any public or private entity *as necessary* to carry out the functions of or provide services to the district." TEX. HEALTH & SAFETY CODE ANN. § 285.091(a) (West 2010) (emphasis added); *see also* TEX. GOV'T CODE ANN. § 791.035(a) (West Supp. 2014) (authorizing a local government and an institution of higher education or university system to "contract with one another to perform any governmental functions and services"), *id.* § 791.003(4)(A) (West 2012) (including a "political subdivision of this state" within the scope of "local government"), § 791.003(3)(D) (defining "governmental functions and services" to include "all or part of a function or service" in the area of "public health and welfare"). This broad grant of authority to collaborate with any entity "as necessary" places no particular restrictions on the managerial arrangement of the collaboration as long as "functions of or . . . services to the district"

are carried out.[4]  Thus, pursuant to subsection 285.091(a) of the Health and Safety Code, the District is authorized to structure the managerial and oversight authority of a physician group as it deems necessary to carry out the functions of or provide services to the District.  Again, to the extent that public funds are used to further a collaboration under subsection 285.091(a), the management and oversight of the physician group, regardless of the manner structured, would need to include controls over the funds sufficient to ensure that the requirements of article III, section 52(a) of the Texas Constitution remain satisfied.

Your last question is whether a charitable organization formed pursuant to section 281.0565 of the Health and Safety Code is "subject to the Texas Open Meetings Act and the Texas [Public Information] Act." Request Letter at 2.  We note at the outset that the Legislature has made a charitable organization formed pursuant to section 281.0565 of the Health and Safety Code "a unit of local government" for purposes of the Tort Claims Act.  TEX. HEALTH & SAFETY CODE ANN. § 281.0565(c) (West 2010);[5] *see also* TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.001–.109 (West 2011 & Supp. 2014) (Texas Tort Claims Act).  The Tort Claims Act makes a governmental unit generally liable for injury or property damage from certain tortious conduct involving a motor vehicle. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.021 (West 2011).  Your question, however, requires us to consider whether the physician group meets the definition of "governmental body" under the Open Meetings Act ("OMA"), which is a different inquiry.

Meetings of a "governmental body," as that term is defined in the OMA, must be open to the public. TEX. GOV'T CODE ANN. § 551.002 (West 2012).  Relevant here, a "governmental body" is defined to include "the governing board of a special district created by law." *Id.* § 551.001(3)(H) (West Supp. 2014).  The District tells us that the physician group was "organized and created" by the District "in conjunction with [UNTHSC]" and that it is "organized . . . exclusively to, among other things, benefit the District and UNTHSC . . . in providing medical services and health-related education." Brief at 2 (internal quotations omitted).  The District further notes that the physician group "will be an independent contractor of the District and will provide specified physician related services pursuant to an arms-length negotiated contract between the District" and the physician group. *Id.* at 9.  Based on this description, the physician group would not appear to meet the definition of "governmental body" in the OMA.  Furthermore, this office has on a number of occasions concluded that nonprofit corporations formed under the Texas Non-Profit Corporation Act that assist local entities pursuant to contract and that are not delegated governmental authority are not subject to the OMA. *See, e.g.*, Tex. Att'y Gen. Op. Nos. JC-0407 (2001) at 8 (health maintenance organization designated by the District as a section 281.0565 entity not a "governmental body" under the OMA), JC-0327 (2001) at 3 (Bryan-College Station Economic

---

[4] Under section 281.0286 of the Health and Safety Code, the District itself cannot "supervise or control the practice of medicine." TEX. HEALTH & SAFETY CODE ANN. § 281.0286(c) (West Supp. 2014).  But section 285.091 allows a district to create a nonprofit to "provide services to the district," which is not statutorily limited to the services the district itself may provide. *Id.* § 285.091(a) (West 2010).

[5] *Amended by* Act of May 20, 2015, 84th Leg., R.S., H.B. 2557, § 2 (to be codified as an amendment to TEX. HEALTH & SAFETY CODE ANN. § 281.0565(c)).

Development Corporation, formed under the Texas Non-Profit Corporation Act, not subject to the OMA). To the extent that a physician group formed pursuant to subsection 281.0565(b) is similarly not delegated any governmental authority, it is likely not a "governmental body" for purposes of the OMA and thus is not subject to its provisions.

The Public Information Act ("PIA") generally requires that information collected, assembled or maintained by or on behalf of a governmental body be made available to the public. *See* TEX. GOV'T CODE ANN. §§ 552.002 (West Supp. 2014) (defining "public information"), .021 (West 2012) (making such information available to the public). A "governmental body" under the PIA is defined to include "the governing board of a special district," not unlike under the provisions of the OMA. *Id.* § 552.003(1)(A)(viii) (West Supp. 2014). The PIA definition also incorporates "the part, section, or portion of an organization, corporation, commission, committee, institution, or agency that spends or that is supported in whole or in part by public funds" in its definition of "governmental body." *Id.* § 552.003(1)(A)(xii). The Texas Supreme Court has recently construed the meaning of the phrase "supported in whole or in part by public funds" to "only include those entities 'sustained' by public funds—thereby ensuring that the statute encompasses only those private entities dependent on the public fisc to operate as a going concern." *Greater Houston P'ship v. Paxton*, No. 13–0745, 2015 WL 3978138, at *7 (Tex. June 26, 2015). The Court noted that "the Legislature did not intend for the statute to reach entities involved in quid pro quo transactions with the government." *Id.*; *see also* Tex. Att'y Gen. Op. No. GA-0666 (2008) at 2 (stating that "[t]he *primary* test . . . is whether the entity receives public funds for the general support of its activities, rather than using those funds to perform a specific and definite obligation"). A complete analysis regarding the physician group's status under the PIA would require the resolution of additional fact issues, which is beyond the purview of an attorney general opinion issued pursuant to section 402.042 of the Government Code. *See* TEX. GOV'T CODE ANN. § 402.042 (West 2013). Thus, we cannot definitively advise you on whether the physician group is subject to the PIA.

## S U M M A R Y

The Tarrant County Hospital District (the "District") is authorized to create and fund a physician group under subsection 281.0565(b) of the Health and Safety Code if it reasonably determines in good faith that the expenditure will serve a public purpose, and it puts sufficient controls in place to ensure that the public purpose is carried out and that the District receives a return benefit.

The District is authorized by subsection 285.091(a) of the Health and Safety Code to structure the managerial and oversight authority of a physician group as it deems necessary to carry out the functions of or provide services to the District.

To the extent that a physician group formed pursuant to subsection 281.0565(b) is not delegated any governmental authority, it is likely not a "governmental body" for purposes of the Open Meetings Act and thus is not subject to its provisions. Whether a physician group formed pursuant to subsection 281.0565(b) is a "governmental body" subject to the Public Information Act requires the resolution of certain fact issues and is thus beyond the purview of an attorney general opinion.

Very truly yours,

KEN PAXTON
Attorney General of Texas


CHARLES E. ROY
First Assistant Attorney General

BRANTLEY STARR
Deputy Attorney General for Legal Counsel

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

BECKY P. CASARES
Assistant Attorney General, Opinion Committee