**JACKSON COUNTY HOSPITAL DISTRICT, Appellant,**

v.

**JACKSON COUNTY CITIZENS FOR CONTINUED HOSPITAL CARE, Appellee.**

No. 13–83–134–CV.

Court of Appeals of Texas, Corpus Christi.

March 15, 1984.

Peter R. Meeker, Davis & Davis, Austin, for appellant.

Tom Garner, Jr., Garner & Roberts, Port Lavaca, for appellee.

Before BISSETT, KENNEDY and GON-ZALEZ, JJ.

## OPINION

BISSETT, Justice.

This is an appeal by Jackson County Hospital District from the granting of a permanent injunction. On September 27, 1982, Jackson County Citizens for Continued Hospital Care, a voluntary association, hereinafter called "plaintiff," filed a petition seeking injunctive relief against the appellant, Jackson County Hospital District, hereinafter referred to as either the "District," or "defendant." The plaintiff sought to permanently enjoin the defendant from discontinuing the emergency room service at Mauritz Memorial Hospital without first having the defendant's Board of Directors adopt, with at least seven members in favor thereof, a resolution calling for an election on whether the emergency room service should be discontinued, and then submitting the issue to the voters for determination. Following a hearing, where no evidence was introduced by either party, but based on certain stipulations of fact, the requested permanent injunction was issued on February 23, 1983.

Defendant presents two points of error in this appeal. In point number one, it asserts that the trial court erred in holding that defendant violated the Jackson County Hospital District Act by discontinuing the emergency room service at Mauritz Memorial Hospital by a five to three vote of its board. In point number two, it asserts, in essence, that the trial court erred in holding that the discontinuance of emergency room services at Mauritz Memorial Hospital can only be effectuated pursuant to the procedures delineated by Sections 4(g) and 9(a) of the Jackson County Hospital District Act, for the reason that these sections do not apply to the mere discontinuance of a specific hospital service.

Plaintiff contends that the Board, by a five to three vote, and, absent the required resolution by seven members and an election, did not have the authority to discon-

tinue the emergency room service at the Mauritz Memorial Hospital since such service was so integral a service that the discontinuance thereof would be tantamount to the closing of a vital and essential part of the hospital which could arguably, set the stage for a piecemeal dismantling of the hospital. On the other hand, the District contends that its action was perfectly legal since it did not close either of the District's hospitals, but merely ceased the furnishing of a specific service at one of the hospitals and combined that service for the entire district at the other hospital.

The Jackson County Hospital District Act, Tex. General Laws 1979, ch. 275, at 586, hereinafter the "Act," created a new county-wide hospital district which replaced the old Edna Hospital District. The newly created district took over both the Edna Hospital, located in Edna, Texas, and also the Mauritz Memorial Hospital, located in Ganado, Texas. The towns of Edna and Ganado are about ten miles apart, a fact which we judicially notice.

The following sections of the Act are pertinent to the resolution of the issue presented by this appeal:

"Sec. 4(g) ... Any five members of the board shall constitute a quorum, and a concurrence of five shall be required in all matters pertaining to the business of the district except that a concurrence of seven is required to order an election on the sale or closing of a hospital transferred to the district by the county or the Edna hospital District or to recommend to the legislature legislation to amend this Act."

*       *       *       *       *       *

"Sec. 9(a) The district may sell or otherwise dispose of any real or personal property or equipment of any nature on terms and conditions found by the board to be in the best interests of its inhabitants, except that the board may not sell or close a hospital transferred to the district by Jackson County or the Edna Hospital District unless the sale or closing of the hospital is approved by a two-thirds majority of the qualified electors

of the district voting at an election called and held for that purpose. The board may not call an election on the question of the sale or closing of one of those hospitals without the concurrence of seven directors and may not call an election for that purpose within 12 months of a preceding election for that purpose."

*       *       *       *       *       *

"Sec. 18(a) Subject to other provisions of this Act, the board is given complete discretion as to the types, number and locations of buildings required to establish and maintain an adequate hospital system ..."

*       *       *       *       *       *

"Sec. 19(a) The board shall have control over and management of all of the affairs of the district and the existing hospitals located therein and shall employ or contract with persons, firms, partnerships, or corporations as deemed necessary or advisable by the board for the conduct of the affairs of the district ..."

*       *       *       *       *       *

"Sec. 20 ... The board shall provide for the Administration, maintenance, and operation of both hospitals transferred to the district on its creation so as to furnish adequate hospital and medical care within the district and to ensure that each hospital is provided with sufficient funds, personnel, and equipment to the end that residents of the district have access to quality and competent health facilities..."

The relevant stipulations, upon which the trial court based its judgment, read as follows:

"1. The Jackson County Hospital District (hereafter District) is a political subdivision of the State of Texas, organized and existing pursuant to S.B. 1294, Acts, 66th Legislature, Regular Session, 1979.

(a) The District is governed by a nine (9) member elected Board of Directors.

(b) A concurrence of five (5) directors is required in all matters pertaining to

the business of the district with the exception of ordering an election on the sale or closing of either or both hospitals or recommending to the Legislature legislation to amend the Enabling Act, in which cases, a concurrence of seven (7) directors is required.

(c) The District owns two hospitals, the Edna Hospital in Edna and the Mauritz Memorial Hospital in Ganado, Texas.

(d) From the time of the creation of the District to the present, both the Edna Hospital and the Mauritz Memorial Hospital have each had and operated an emergency room.

2. Plaintiff is a voluntary association composed of nine hundred eleven (911) residents and/or taxpayers of the District. Plaintiff has standing to bring this suit.

3. The Board of Directors of the District voted on August 19, 1982 to close the Emergency Room at Mauritz Memorial Hospital effective October 1, 1982. The vote was by concurrence of five (5) to three (3) in favor of the closing."

\*    \*    \*    \*    \*    \*

"6. No election has been called to date to close either hospital, nor has any recommendation been made to the Texas Legislature that would in any way effectuate the closing of either hospital.

7. The Active Medical Staff of the District consists of five physicians. Of that number four regularly admit patients to the Edna Hospital and one regularly admits patients to the Mauritz Memorial Hospital."

\*    \*    \*    \*    \*    \*

"9. Even if the Emergency Room Service at Mauritz Memorial Hospital is closed, the room and all equipment will still be available for utilization as a treatment room by the medical staff, hospital personnel and patients for treatment of other than life threatening emergencies.

(a) The closing of the Emergency Room at Mauritz Memorial Hospital will leave the District with one combined, fully operational, staffed twenty four (24) hour emergency room service, located in the Edna Hospital.

(b) Twenty four (24) hour coverage of the emergency room by the physicians will be limited to the Edna Hospital Emergency Room.

(c) True emergency patients who currently would go or be transported to the Mauritz Memorial Hospital Emergency Room, after the closing, will be treated in the Edna Hospital Emergency Room.

(d) A true emergency is defined as a life threatening situation.

(e) Non-emergency cases, after the closing, may still be attended in the treatment room at Mauritz Memorial Hospital.

(f) No equipment will be transferred out of the treatment room at Mauritz Memorial Hospital or otherwise disposed of, but will remain for utilization by the medical staff and hospital personnel."

In addition to the foregoing stipulations, it was further stipulated that the "emergency room visits" for the previous year were 5,326 for the Edna Hospital and 823 for the Mauritz Memorial Hospital. It was also stipulated that "net budgeted loss" for fiscal year 1983 was $125,824.00 for the Edna Hospital and $625,565 for the Mauritz Memorial Hospital.

The judgment of the trial court, in relevant part, recites:

"The Court having heard the arguments of counsel and having reviewed the relevant authorities, is of the opinion that the Governing Board's action of August 19, 1982, whereby it decided on a five to three vote to close the emergency room at Mauritz Memorial Hospital was violative of the Jackson County Hospital District Act for the reason that the closing of same can only be effectuated pursuant to the procedures delineated by Section 4(g) and 9(a) of said enabling legislation, and for such reason the application for permanent injunction made by Plaintiff herein should be granted.

It is, therefore, ordered, adjudged and decreed that the permanent injunction requested by plaintiff in its original peti-

tion for Injunctive Relief be and the same is herein Granted, and that defendant, its Board of Directors, agents, servents, (sic) and employees are herein permanently enjoined from closing the emergency room at Mauritz Memorial Hospital without first calling for an election and receiving a favorable vote as provided for in Sections 4(g) and 9(a) of the Jackson County Hospital District Act."

■ A permanent injunction, unlike a temporary injunction, is reviewed by this Court in the same manner as in any other appellate review. *Diesel Injection Sales & Services v. Renfro*, 656 S.W.2d 568 (Tex. App.—Corpus Christi 1983, writ ref'd n.r. e.); *Electronic Data Systems Corp. v. Powell*, 524 S.W.2d 393 (Tex.Civ.App.—Dallas 1975, writ ref'd n.r.e.). The Texas Health Facilities Commission, 25 Tex.Admin.Code 505.1, (Shepard's September 1, 1981, Definitions), hereinafter the "Code," defines a hospital as follows:

"Hospital—An institution which has as its primary function inpatient diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons, or rehabilitation services for the rehabilitation of injured, disabled, or sick persons, by or under the supervision of physicians..."

The Code further defines a health care service:

"Includes but is not limited to the following: emergency medicine, radiology computerized tomographic scanning, radiation therapy, psychiatric care, surgery, intensive care, coronary care, pediatrics, neonatology (neonatal special care), gynecology, obstetrics, laboratory, dialysis, general medical care, medical/surgical care, inpatient nursing care, inpatient intermediate nursing care, inpatient skilled nursing care, intermediate care-mentally retarded-V (ICF–MR–V), intermediate care-mentally retarded-VI (ICF–MR–VI), inpatient alcohol or drug abuse treatment, extended care, cardiac catheterization, open-heart surgey, and inpatient rehabilitation."

With the above-quoted definitions in mind, we conclude that emergency room service is but one of the many health care services which may be provided by a hospital. While the Act gives the Board of Directors broad powers and great discretion in managing the District's business and affairs, it qualifies the broad grant of power where the closing of the hospital is concerned.

■ The question to be answered in this appeal is whether the emergency room at Mauritz Memorial Hospital was so integral a service that the discontinuance thereof under the facts stipulated would constitute a closing of the hospital within the purview of Sections 4(g) and 9(a) of the Act. We answer the question in the negative.

■ It is well settled that where the language contained in a statute is plain and unambiguous, a court should not resort to rules of construction. *Ex parte Roloff*, 510 S.W.2d 913 (Tex.1974); *Fox v. Burgess*, 157 Tex. 292, 302 S.W.2d 405 (1957).

In our opinion, there is no ambiguity in either of Sections 4(g) or 9(a) of the Act. The language used is clear, concise and plain. The provisions specifically state that a concurrence of seven members of the Board is required to order an election for the "closing" of a District hospital, and that all other matters pertaining to the business of the district may be transacted by a concurrence of five members. In the case at bar, five members voted in favor of closing the emergency room at the Mauritz Memorial Hospital.

■ Plaintiff admitted in its petition that the action taken by the Board did not constitute a closing of the hospital, but was instead a "partial" closing. It argues in its brief that such action amounted to a "partial" closing. Even if such action by the Board were to be construed as a "partial" closing, such action is still not prohibited by the express terms of Sections 4(g) or 9(a) quoted above. Those provisions simply require the Board, upon proper resolution, to call an election in the event a hospital is

closed, not in the event that a hospital is "partially" closed.

If the Legislature had intended to require a resolution with the concurrence of seven directors in order to obtain voter approval of a "partial" closing of one of the District's hospitals, it would have been very simple indeed to manifest this intent by expressly so stating in Sections 4(g) and 9(a) of the Act, as it did in 1981, when Article 4437c–2 was enacted.

It could have provided that:

"... a concurrence of seven is required to order an election on the sale or closing *of all or any part of* a hospital ..."

But, the Legislature, in its wisdom, did not choose to insert such additional language when the Act was enacted in 1979. As already noted, such language is clear and unambiguous. The Board need not obtain approval through an election unless it desires to close or sell the entire hospital.

Even if the "closing" requirements of Sections 4(g) and 9(a) of the Act are held to be ambiguous, application of the rules of statutory construction require a holding that the election requirements of the involved sections do not apply to a closing of one of the services furnished by the hospital.

Assuming, arguendo, that there are ambiguities in the Act, in deciding whether Sections 4(g) and 9(a) which require the concurrence of seven members of the Board and the approval of such resolution at an election in order to "partially" close a hospital, we apply the well established rules of statutory construction. The word "closing" is not defined in the Act; therefore, resort must be had to its ordinary meaning. TEX.REV.CIV.STAT. art. 10(1) (Vernon 1969). Black's Law Dictionary offers this definition of the verb "close" as:

"to finish, bring to an end, conclude, terminate ... to go out of business ..."

■ In construing a statute, a court must look to the wording of the entire statute, not to just one word or phrase therein, in order to determine legislative intent. *Ex parte Roloff*, 510 S.W.2d 913;

*Citizens Bank of Bryan v. First State Bank*, 580 S.W.2d 344 (Tex.1979).

■ It is a cardinal rule of statutory construction that every word, sentence, clause, and phrase of a statute has been used for a purpose and should be given effect. *Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93 (1957).

■ In interpreting a statute, courts should not read additional words into a statute in order to reach a pre-determined meaning. Courts may insert additional words into a statutory provision *only* when it is clearly necessary to give effect to the obvious legislative intent. *Hunter v. Ft. Worth Capital Corporation*, 620 S.W.2d 547 (Tex.1981).

Emergency room service is but one of many different health care services furnished by a hospital. It is not expressly provided for in the definition of a hospital or of health care service. Indeed, a hospital's primary function is inpatient diagnosis and treatment, while an emergency room may handle many cases on an outpatient basis where the patients are not admitted to the hospital for further treatment.

The particular facts of this case do not lend support to the proposition that the emergency room service was a service so integral to the functioning of Mauritz Memorial Hospital that its discontinuance was tantamount to the closure of the hospital itself. An examination of the stipulations made by both parties in the record indicates that the Board did not intend to close the hospital; that it planned to keep the hospital open; and that all the equipment in the emergency room was to be left in the room for use when needed. The discontinuance of the service, in essence, did nothing more than to dispense with the staffing of the emergency room. Nothing in the record shows that the emergency room was essential to the operation of any other service, or that it was necessary for the admission of patients or to treat inpatients. Mauritz Memorial Hospital, after the Board's action, would still have basic inpa-

tient services sufficient to continue operation as a hospital under the definition given above. These would include routine nursing service, nursery, delivery room, operating room, recovery room, cardiac monitoring, laboratory services, radiology, pharmacy, anesthesiology, respiratory therapy, and physical therapy.

The decision by the Board to discontinue the emergency room service at Mauritz Memorial Hospital did not mean that patients in need of emergency care would not be treated. Life threatening emergency patients would be treated in the District's combined emergency room at Edna Hospital, and the non-life threatening "emergency" patients would be treated in the Mauritz Memorial Hospital's former emergency room which would be available as a treatment room.

Plaintiff contends that Section 20 of the Act prohibits defendant from discontinuing emergency room service because it mandates that the hospital district must furnish "adequate hospital and medical care" at both hospitals in the district. We do not agree. The involved Section is a general mandate to the District to provide a reasonable and adequate level of medical care at both hospitals. It is not, of itself, a prohibition against discontinuance of any specific service. Its affirmative mandate does not contain any statement that any specific service be continued, including emergency room services. Additionally, the Section speaks to providing adequate hospital care to the district as a whole, which can still be effectuated by having emergency room service at the Edna Hospital. We cannot agree that the discontinuance of the emergency room service at the Mauritz Memorial Hospital alone was a discontinuance of a service so integral to the functioning of the hospital so as to amount to an effectual closing of the hospital.

Plaintiff also contends that TEX. REV.CIV.STAT.ANN. art. 4437c–2 (Vernon Supp.1982) recognizes a partial closing as a closing requiring voter approval. We disagree. Section 2(a) of the statute allows the governing body of a hospital to close all or any part of the hospital. Section 2(c) *allows* the voters of a hospital district to *petition* for a referendum on the issue. Section 3(a) requires the governing body to call an election on the issue *if* it has received a petition containing the names of at least ten percent of the registered voters within thirty days from the date the hospital was ordered closed. Section 2(a) sets out the governing body's discretionary authority to close a hospital, and Section 3(a) qualifies it by allowing the voters to petition for a referendum. The statute does not require approval of the voters in every instance of a partial or full closing, or the discontinuance of a service (such as emergency room service). It requires such approval only when the voters themselves first petition the governing body of the hospital for an election within the thirty day period. In the instant case, Jackson County Hospital District Board ordered the discontinuance of the services on August 19, 1982. Nothing in the record shows any action taken by plaintiff until it filed its original petition in the district court on September 27, 1982. Therefore, plaintiff cannot invoke the provisions of Article 4437c–2 allowing for a voter referendum. Moreover, plaintiff failed to plead this theory in its original petition; therefore, the judgment cannot be supported on that theory.

Plaintiff's arguments actually point up the fact that the Hospital District in question has the power to effect a discontinuance of the services in question, since Section 2(a) of Article 4437c–2, which was enacted after the effective date of the Act, can be viewed as an independent grant of authority apart from the enabling act to partially close the hospital *unless* a petition is received from ten percent of the registered voters within the prescribed thirty day period. The only saving construction which does not render the two statutes inconsistent is to apply the Act to full closings of hospitals, and to construe Article 4437c–2 as applying to partial closings of either of the two hospitals within the District.

Case law provides us with further guidance on the powers of a hospital board. Such an administrative body may exercise only those powers expressly delegated to it by the Legislature, or which exist by clear and unquestioned implication. *Tri-City Fresh Water Supply District No. 2 v. Mann,* 135 Tex. 280, 142 S.W.2d 945, 946 (1940); *Mascarenhas v. Meridian Hospital Authority,* 560 F.2d 683 (5th Cir.1977).

Since Article 4437c–2 § 2(a), which became effective on August 31, 1981, gives the hospital district the authority to *partially* close a hospital but the Jackson County Hospital Act does not explicitly do so, it follows by implication that partial closings may be effectuated under Article 4437c–2 § 2(a). In *Mascarenhas,* the enabling statute was read narrowly so as to prohibit the hospital authority from selling its only hospital. However, the Fifth Circuit, in applying Texas law, noted that the sale was an attempt to exit the hospital business altogether and stated that such a sale deviated from the statutory scheme so drastically as to require legislative support. *Mascarenhas* at 686. That is not the case here, where the hospital district seeks merely to discontinue a single service at only one of its hospitals.

While it is evident that the Legislature intended that a hospital in the District should not be completely closed without the approval of a majority of the voting citizens within the District, it does not follow from that premise that all changes in the services provided by one of the District's hospitals must be subject to the review of the residents of the district. Certainly, it should be within the Board's managerial responsibilities to act prudently and take such actions as combining services where necessary.

We sustain both of defendant's points of error and hold that the defendant did not violate the Jackson County Hospital District Act by discontinuing the emergency room service at Mauritz Memorial Hospital. We also hold that the trial court erred in issuing a permanent injunction. Accordingly, the judgment of the trial court is REVERSED and the permanent injunction is hereby DISSOLVED.