

# THE ATTORNEY GENERAL
## OF TEXAS

February 23, 1988

JIM MATTOX
ATTORNEY GENERAL

Honorable Ashley Smith                 Opinion No.  JM-864
Chairman
Government Organization                Re:  Authority of Amarillo
   Committee                           Hospital District to dis-
Texas House of Representatives         pose of  Northwest  Texas
P. O. Box 2910                         Hospital  (RQ-1277)
Austin, Texas     78769

Dear Representative Smith:

    You ask several questions  pertaining to the  City of
Amarillo Hospital District (AHD).  The AHD  was authorized
by article IX,  section 5, of  the Texas Constitution  and
created by Acts 1957, 55th Leg., ch. 136, at 298.  Because
the creating statute  predated the  effective date of  the
constitutional amendment  authorizing  the  district,  the
legislature "validated" the  enabling statute by  enacting
House Bill No. 70 by Acts 1959, 56th Leg.,  ch. 32, at 59.
House Bill No.  70 was  essentially a  reenactment of  the
earlier statute with a few amendments.

    The boundaries of  the AHD  are coextensive with  the
boundaries of the city of Amarillo.  Tex.  Const. art. IX,
§5(a).  The constitutional provision as originally adopted
authorized the legislature to permit Potter County to levy
a tax  in that  portion  of the  county  outside the  city
limits of Amarillo  to render  financial aid  to the  dis-
trict.  Art. IX, §5(b).  A similar provision  relating to
Randall County  was  added to  the  constitution  in  1987.
Art. IX, §5(e).  Thus, Potter and Randall County residents
who are not residents of a hospital district may be served
by the AHD.[1]  Acts 1957, 55th Leg., ch. 136,  §16, at 304,
as amended by Acts 1959, 56th Leg., ch. 32, §16, at 66 and
Acts 1987, 70th Leg., 2nd C.S., ch. 71, §4, at 454.

---

    1.  Randall County has not  yet held an  election on
the question of participating in the AHD.

We restate your questions as follows:

    1. Does the AHD board of managers or the Amarillo City Commission own and operate the Northwest Texas Hospital?

    2. Who has final authority to sell, lease, or close the hospital? Which entity, the hospital district board or the Amarillo City Commission, must determine that the sale, lease, or closure of the hospital is in the best interest of the district's residents?

    3. Is an election required to approve the sale or lease of the Northwest Texas Hospital to another entity?

    4. If the hospital is sold, leased, or closed, what is the hospital district's responsibility to the persons it serves?

The AHD operates the Northwest Texas Hospital. Confusion about the authority of the board of managers of the hospital district may stem from the fact that the governing body of the city of Amarillo also has statutory responsibilities in relation to this hospital district. The district's enabling legislation provides in pertinent part:

    Sec. 1. The City of Amarillo, Texas, may be constituted a Hospital <u>District . . . for the purpose of owning and operating a hospital or hospital system for indigent and needy persons</u>. . . .

    . . . .

    Sec. 4. a. Any lands, <u>buildings or equipment</u> that may be jointly or separately <u>owned</u> by the <u>City</u> of Amarillo <u>and</u> the <u>County</u> of Potter, within the hospital district, and by which medical services or hospital care are furnished to the <u>indigent . . . shall become the property of the Hospital District; and title thereto shall vest in the Hospital District</u>. . . .

    Sec. 5. a. The <u>governing body of the City of Amarillo shall appoint a Board of Hospital</u>

> Managers . . . whose duties shall be to manage, control and administer the hospital or hospital system of the Hospital District. . . . The Board is authorized to promulgate rules and regulations for the operation of the hospital or hospital system. . . .
>
> Sec. 6. The governing body of the City of Amarillo shall have the power to prescribe the method and manner of making purchases and expenditures by and for such Hospital District . . . or may delegate any or all such powers to the Board of Managers. . . .
>
> . . . .
>
> Sec. 9. a. The Hospital District . . . shall have the right and power of eminent domain. . . .
>
> b. The Hospital District shall have the power to take by purchase or lease lands within or without the district as may be required for its purpose; and it may sell or lease any lands owned by it at public or private sale; provided, however, that no real estate may be sold or leased until after there has been a determination by the governing body of the City of Amarillo that either the lands are no longer required for the purposes of the district or that the grantee or lessee will use the property for hospital purposes or purposes incidental and necessary to hospital purposes. (Emphasis added.)

Acts 1957, 55th Leg., ch. 136 as amended by Acts 1959, 56th Leg., ch. 32.

In answer to your first question, it is clear from the language quoted above in sections 4, 5, and 9 that the hospital district owns Northwest Texas Hospital and that the board of managers operates the facility.

Next you ask about the authority to sell, lease, or close the hospital. Section 9(b) of the district's enabling statute quoted above addresses the sale of land. However, article 4437c-2, V.T.C.S., is a later enactment of the legislature that is specifically concerned with the

sale, lease, or closure of hospitals. In our opinion, this article answers your second and third questions. The statute provides in pertinent part:

> Section 1. In this Act, 'official action' means . . . a resolution adopted by the governing body of a hospital district.

> Section 2. (a) The governing body of . . . a hospital district by official action may order the sale, lease, or closure of all or any part of, including real property, a hospital owned and operated by the political subdivision. The official action must include a finding by the governing body that the sale, lease, or closure is in the best interest of the residents of the political subdivision.

> . . . .

> (c) The sale or closure of a hospital is contingent on the right of the voters by petition to require a referendum on the issue. The sale or closure may not take effect sooner than the expiration of the time for a petition to be filed under Section 3 of this Act and, if a valid petition is filed, the sale or closure is contingent on voter approval.

> . . . .

> Section 3. (a) If before the 31st day after the date on which the governing body orders that a hospital be sold or closed the governing body receives a petition signed by at least 10 percent of the qualified voters of the political subdivision requesting an election on the question, the governing body shall order and conduct an election.

> (b) . . . If a majority of the qualified voters voting on the question approve the sale or closure, the hospital may be sold or closed.

V.T.C.S. art. 4437c-2.

Pursuant to article 4437c-2, V.T.C.S., the board of managers of the hospital district has authority to sell, lease, or close the Northwest Texas Hospital after the board determines that such action is in the best interest of the district's residents.

Article 4437c-2, V.T.C.S., does not give the city of Amarillo's governing body any authority to participate in a decision by the hospital district's board of managers to sell, lease, or close its hospital facility. If the proposed action is a sale or closure of the facility, the voters may petition for an election on the issue of approving or disapproving the proposed sale or closure. An election is not required unless the petition requirements of article 4437c-2, V.T.C.S., are satisfied. <u>See Jackson County Hospital District v. Jackson County Citizens For Continued Hospital Care</u>, 669 S.W.2d 147 (Tex. App. - Corpus Christi 1984, no writ).

Finally, you ask about the hospital district's responsibility to the persons it serves if the Northwest Texas Hospital is sold, leased, or closed. The constitutional provision and statute governing the AHD require the district to provide medical care to the needy inhabitants of the district and to residents of Potter County who are outside the district's boundaries. Tex. Const. art. IX, §5; Acts 1957, 55th Leg., ch. 136, as amended. If approved by the voters of Randall County, the district will also be responsible for the care of Randall County residents who do not reside in a hospital district.

Pursuant to the Indigent Health Care and Treatment Act (article 4438f, V.T.C.S.) a hospital district has a mandatory duty to provide the health care services required under the Texas Constitution and the statute creating the district. V.T.C.S. art. 4438f, §11.02. In accordance with section 11.03 of the Indigent Health Care and Treatment Act, a hospital district may arrange to provide health care services through other public facilities, by contracting with a private provider, or through the purchase of insurance for eligible residents. The district may also affiliate with other public hospitals, hospital districts or governmental entities to provide regional administration and delivery of health care services. <u>See</u> Attorney General Opinion JM-858 (1988).

Regardless of the method chosen by the hospital district to provide services to its eligible recipients, the district is liable for the health care services as

provided by  the constitution  and  its statute.  V.T.C.S. art. 4438f, §12.01(b).  Thus, the sale,  closure, or lease of the Northwest Texas Hospital will have no effect on the legal responsibility that the AHD has  towards the persons it serves.

### S U M M A R Y

The City of  Amarillo Hospital  District owns the Northwest Texas Hospital.  The board of managers of the hospital district operates the facility.

Pursuant to  article 4437c-2,  V.T.C.S., the hospital district's board of managers may sell, lease,  or  close  a  hospital  after  a finding that  such  action  is  in  the  best interest of  the district's  residents.  The voters of the  district may  petition for  an election on the issue of selling or closing a hospital.

If the Northwest Texas Hospital is sold, leased,  or  closed,  the  City  of  Amarillo Hospital District  continues  to  be  legally responsible  for  providing  medical  care pursuant to  the  Indigent  Health  Care  and Treatment Act.

Very truly yours,

JIM  MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Karen C. Gladney
Assistant Attorney General