

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

May 12, 2004

The Honorable Tim Curry
Tarrant County Criminal District Attorney
1025 South Jennings, Suite 300
Fort Worth, Texas 76104

Opinion No. GA-0188

Re: Whether the Tarrant County Hospital District may expend funds to establish a self-insurance program providing liability coverage for JPS Physician Group, Inc. and its health-care-provider employees (RQ-0139-GA)

Dear Mr. Curry:

You ask whether the Tarrant County Hospital District (the "Hospital District" or "District") may expend funds to establish a self-insurance program providing liability coverage for JPS Physician Group, Inc. (the "Physician Group") and its health-care-provider employees.[1]

According to your letter, the Hospital District was created in 1959 pursuant to article IX, section 4 of the Texas Constitution and former article 4494n of the Revised Civil Statutes, which is now codified as chapter 281 of the Health and Safety Code. *See* Request Letter, *supra* note 1, at 1. You inform us that the Hospital District formed the Physician Group pursuant to chapter 281.0565 of the Health and Safety Code. *See id.* Section 281.0565 authorizes a hospital district to "create a charitable organization to facilitate the management of a district health care program by providing or arranging health care services, developing resources for health care services, or providing ancillary support services for the district." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(b) (Vernon 2001); *see also id.* § 281.0565(a) ("In this section, 'charitable organization' means an organization that is exempt from federal income tax under Section 501(a) of the Internal Revenue Code of 1986 by being listed as an exempt organization in Section 501(c)(3) or 501(c)(4) of the code.").

A charitable organization created by a hospital district under section 281.0565 "is a unit of local government for purposes of [the Texas Tort Claims Act,] Chapter 101, Civil Practice and Remedies Code," *id.* § 281.0565(c), which limits the liability of governmental units and their employees. *See* TEX. CIV. PRAC. & REM. CODE ch. 101 (Vernon 1997 & Supp. 2004). The Physician Group's bylaws provide that it is a section 501(c)(3) corporation organized to benefit the

---

[1]Letter from Honorable Tim Curry, Tarrant County Criminal District Attorney, to Honorable Greg Abbott, Texas Attorney General at 2 (Nov. 21, 2003) (on file with Opinion Committee, *also available at* http://www.oag.state .tx.us) [hereinafter Request Letter].

Hospital District. *See* Request Letter, *supra* note 1 (Bylaws of JPS Physician Group, Inc. at 1). The District is its sole member. *See id.* (Bylaws at 2). The bylaws also provide that the Hospital District "shall not be liable for the debts, liabilities, or obligations of the Corporation." *Id.* (Bylaws at 5).

The Hospital District asks about its authority to expend funds to establish a self-insurance fund for the Physician Group: "Specifically, we ask if the District may use its funds for the creation of a . . . self-insurance program that would cover [the Physician Group] and/or its physician and other healthcare provider employees for health care and/or professional liability claims." Request Letter, *supra* note 1, at 2. You are particularly interested in whether expenditures for this purpose would comport with article III, section 52(a) of the Texas Constitution, which limits local governments and other political subdivisions' authority to expend public funds. *See* TEX. CONST. art. III, § 52(a).

Before reaching your constitutional question, we review the Hospital District's statutory authority to expend funds to establish a self-insurance fund for the Physician Group. A hospital district may only exercise those powers expressly delegated to it by the legislature, or those existing by clear and unquestioned implication. *See Mascarenhas v. Meridian Hosp. Auth.*, 560 F.2d 683, 685 (5th Cir. 1977) (citing *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940) with respect to the authority of special districts); *Jackson County Hosp. Dist. v. Jackson County Citizens for Continued Hosp. Care*, 669 S.W.2d 147, 154 (Tex. App.–Corpus Christi 1984, no writ); Tex. Att'y Gen. Op. Nos. GA-0102 (2003) at 4, JC-0268 (2000) at 1.

No provision in chapter 281 of the Health and Safety Code authorizes a hospital district to self-insure or to insure another entity. However, section 2259.031 of the Government Code expressly authorizes a "governmental unit" to "establish a self-insurance fund to protect the governmental unit and its officers, employees, and agents from any insurable risk or hazard." TEX. GOV'T CODE ANN. § 2259.031(a) (Vernon 2000). It further provides that the governmental unit may "(1) issue public securities and use the proceeds for all or part of the fund; or (2) use any money available to the governmental unit for the fund." *Id.* § 2259.031(b). Section 2259.032 declares that "[t]he issuance of a public security or the use of available money for a self-insurance fund under this subchapter is a public purpose of the governmental unit." *Id.* § 2259.032.

Chapter 2259 defines the term "governmental unit" to mean:

> (A) a state agency or institution;
>
> (B) a local government; or
>
> (C) an entity acting on behalf of a state agency or institution or local government.

*Id.* § 2259.001(1). The term "local government" includes "a municipality or other political subdivision of this state." *Id.* § 2259.001(2). A hospital district is a political subdivision of this state. *See Salcedo v. El Paso County Hosp. Dist.*, 659 S.W.2d 30, 31 (Tex. 1983) ("The El Paso Hospital District is a political subdivision of the State of Texas."); *Armendarez v. Tarrant County*

*Hosp. Dist.*, 781 S.W.2d 301, 307 (Tex. App.–Fort Worth 1989, writ denied) (noting that Tarrant County Hospital District is a state political subdivision). Thus, the Hospital District is a governmental unit for purposes of chapter 2259. *See* TEX. GOV'T CODE ANN. § 2259.001(1)(B), (2) (Vernon 2000).

Section 2259.031 authorizes the Hospital District to establish a self-insurance fund to protect itself and its officers and employees. *See id.* § 2259.031(a) (authorizing a "governmental unit" to "establish a self-insurance fund *to protect the governmental unit and its* officers, employees, and agents from any insurable risk or hazard") (emphasis added). Clearly, this provision contemplates that a governmental unit will insure itself and its own officers and employees. The Hospital District may establish a self-insurance fund protecting officers and employees of the Physician Group pursuant to section 2259.031 only if they are also officers and employees of the Hospital District. It appears from your request letter that the Physician Group is an entity separate from the Hospital District and that its officers and employees are not Hospital District officers and employees. *See* Request Letter, *supra* note 1, at 2.

The Physician Group, as an entity established to act on behalf of the Hospital District, is also a "governmental unit" under chapter 2259. *See* TEX. GOV'T CODE ANN. § 2259.001(1)(C) (Vernon 2000) (defining "governmental unit" to include "an entity acting on behalf of a state agency or institution or local government"). Thus, section 2259.031 authorizes the Physician Group to establish a self-insurance fund to protect itself and its officers and employees. *See id.* § 2259.031(a).

By necessary implication, a hospital district's express authority under section 281.0565 of the Health and Safety Code to create a charitable organization "to facilitate the management of a district health care program" authorizes a hospital district to contract with a charitable organization it has created to set the terms for the charitable organization's work on the hospital district's behalf. *See* TEX. HEALTH & SAFETY CODE ANN. § 281.0565(b) (Vernon 2001). The contract must relate to the charitable organization's statutory purpose to "facilitate the management of a district health care program by providing or arranging health care services, developing resources for health care services, or providing ancillary support services for the district," *id.*, and to the hospital district's authority to create the charitable organization for that purpose. Accordingly, the Hospital District may by contract provide funds to the Physician Group for the Physician Group to establish a self-insurance fund under section 2259.031, provided that the contract "facilitate[s] the management of a district health care program." *Id.*

Article III, section 52(a) of the Texas Constitution limits the authority of political subdivisions, such as hospital districts, to expend public funds to aid private entities:

> [T]he Legislature shall have no power to authorize any county, city, town or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever . . . .

TEX. CONST. art. III, § 52(a). As the Supreme Court of Texas has held, in order to comport with article III, section 52(a), the predominant purpose of a statute requiring a public expenditure must

be to accomplish a public purpose, not to benefit private parties, and the statute must retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment and ensure that the political subdivision receives a return benefit. *See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383-84 (Tex. 2002). This office has identified similar principles for determining if a particular expenditure serves a public purpose: "In making an expenditure of [public] funds that benefits a private person or entity, . . . a [political subdivision's governing body] will avoid violating article III, section 52 if it (i) determines in good faith that the expenditure serves a public purpose and (ii) places sufficient controls on the transaction, contractual or otherwise, to ensure that the public purpose is carried out." Tex. Att'y Gen. Op. No. GA-0078 (2003) at 4-5.

Accordingly, article III, section 52(a) requires the Hospital District's board to determine in good faith that providing funds to the Physician Group for the Physician Group to self-insure serves a public purpose of the District. *See id.* The Hospital District asserts that the Physician Group "is crucial to accomplishing" the District's public purpose, providing medical and hospital services to the needy: "In order to provide medical or other healthcare services on behalf of the District, [the Physician Group] must employ or otherwise retain physicians and other healthcare providers. To do so, [the Physician Group] must in some manner assure coverage for professional liability for these healthcare providers." Request Letter, *supra* note 1, at 3. It is for the Hospital District board to determine in the first instance whether funding professional liability coverage for the Physician Group and its officers and employees serves a District public purpose. *See* Tex. Att'y Gen. Op. No. GA-0078 (2003) at 4 (citing *Young v. City of Houston*, 756 S.W.2d 813, 814 (Tex. App.–Houston [1st Dist.] 1988, writ denied); *City of Coleman v. Rhone*, 222 S.W.2d 646, 649 (Tex. Civ. App.–Eastland 1949, writ ref'd)).

Should the Hospital District board determine that providing funds for the Physician Group to self-insure serves a District public purpose, the contract pursuant to which the District provides funds to the Physician Group must place sufficient controls on the transaction to ensure that the public purpose is carried out. *See id.* at 4-5. The Hospital District states that "[t]he exact nature of the contemplated self insurance program . . . is not yet known," and indicates that the District has not yet determined the contractual controls it will use to assure that funds are used for the District's public purpose. *See* Request Letter, *supra* note 1, at 3-4. The Hospital District also observes that the Physician Group's bylaws authorize the District to control District funds dedicated to a Physician Group self-insurance program. *Id.* at 4; *see also id.* (Bylaws at 2-4, art. II, § 5(a), (r)-(s)) (powers reserved by sole member include power to develop, approve, adopt and modify capital and operating budgets; to purchase, adopt or amend insurance coverage for the corporation, its officers and employees; and to settle litigation). Contractual controls coupled with the Hospital District's authority under the Physician Group's bylaws could provide sufficient controls to satisfy article III, section 52(a).

## S U M M A R Y

Section 281.0565 of the Health and Safety Code authorizes a hospital district to contract with a charitable organization that it has created "to facilitate the management of a district health care program by providing or arranging health care services, developing resources for health care services, or providing ancillary support services for the district." TEX. HEALTH & SAFETY CODE ANN. § 281.0565(b) (Vernon 2001). The Tarrant County Hospital District may by contract provide funds to a charitable organization it has created under section 281.0565 for the charitable organization to self-insure under section 2259.031 of the Government Code if the contract facilitates the management of a district health care program. A Hospital District expenditure for this purpose will comport with article III, section 52(a) of the Texas Constitution if the Hospital District's board determines in good faith that the expenditure serves a public purpose of the Hospital District. In addition, the contract pursuant to which the Hospital District provides funds to the charitable organization must place sufficient controls on the transaction to ensure that the public purpose is carried out.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Mary R. Crouter
Assistant Attorney General, Opinion Committee