May 10, 2007

The Honorable Dennis Bonnen
Chair, Committee on Environmental
   Regulation
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0546

Re: Whether the Angleton-Danbury Hospital District of Brazoria County is authorized to house a private imaging business in the district's hospital facility and to manage the private imaging business (RQ-0542-GA)

Dear Representative Bonnen:

On behalf of the Angleton-Danbury Hospital District of Brazoria County, Texas (the "District"), you ask whether the District is authorized "to house a private imaging business in the District's hospital facility and to manage that private entity['s] imaging business, in order to obtain an imaging capacity it would not otherwise have."[1]

We are informed that the District operates the Angleton-Danbury Medical Center (the "Hospital"), a 64-bed, general hospital. Request Letter, *supra* note 1, at 1. A private entity has proposed acquiring an advanced computerized axial tomography (CT) scanner, housing the scanner and its operation at the Hospital, and having the Hospital manage the daily operation of the CT scanner.[2] The private entity would pay the Hospital a fee for the management services and for housing the CT scanner. *See* Request Letter, *supra* note 1, at 1. The Hospital would receive 30 percent of the profits from the CT imaging center, and the private entity would retain the remaining 70 percent.[3] The proposed arrangement would make available to the Hospital an advanced CT scanner that it would not otherwise acquire at this time. *See* Request Letter, *supra* note 1, at 1.

---

[1]*See* Letter from David A. Bleakney, Chief Executive Officer and Administrator of Angleton-Danbury Medical Center, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Oct. 16, 2006) (attached to letter from Honorable Dennis Bonnen, Chair, House Committee on Environmental Regulation, to Honorable Greg Abbott, Attorney General of Texas (Oct. 17, 2006)) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[2]The Hospital describes the CT scanner and its operations as a "single modality imaging center." Request Letter, *supra* note 1, at 1. The contemplated hospital management and operation services would generally include scheduling and registering patients, marketing, providing a full-time administrator, billing, arranging for supplies, and maintaining and repairing the CT scanner. *Id.*

[3]*See* Telephone Conversation with Paula Tobon-Stevens, Associate Administrator of Business Development, Angleton-Danbury Medical Center, and Rose McCullough, Chief Nursing Officer, Angleton-Danbury Medical Center (Jan. 12, 2007) [hereinafter Telephone Conversation].

The District is a hospital district created by special law, codified at Special District Local Laws Code chapter 1002 (the "Act"), under the authority of Texas Constitution article IX, section 9. *See* TEX. SPEC. DIST. CODE ANN. § 1002.002 (Vernon 2006); *see also* TEX. CONST. art. IX, § 9 (authorizing the Legislature to provide by special or general law for the creation and operation of hospital districts that "shall assume full responsibility for providing medical and hospital care for its needy inhabitants"). As a hospital district, the District "may exercise only those powers expressly delegated to it by the Legislature, or which exist by clear and unquestioned implication." *Jackson County Hosp. Dist. v. Jackson County Citizens for Continued Hosp. Care*, 669 S.W.2d 147, 154 (Tex. App.—Corpus Christi 1984, no writ) (citing *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940) with respect to the authority of special districts and *Mascarenhas v. Meridian Hosp. Auth.*, 560 F.2d 683, 685 (5th Cir. 1977) with respect to a municipal hospital authority). Implied powers are those that are "indispensable to . . . the accomplishment of the purposes of [the special district's] creation." *Tri-City*, 142 S.W.2d at 947.

Keeping in mind the above principles, we look at the District's statutory authority under the Act and applicable general law. The District is a political subdivision of the state with "full responsibility for providing medical and hospital care for the district's needy residents." TEX. SPEC. DIST. CODE ANN. §§ 1002.003, .101 (Vernon 2006); *see also* TEX. CONST. art. IX, § 9. The Act grants the District's board of directors "all powers necessary, convenient, or incidental to carry out the purposes for which the district was created." TEX. SPEC. DIST. CODE ANN. § 1002.103(a) (Vernon 2006). Additionally, it provides that the board has total management and control of the District's business,

> including the power to negotiate and contract with any person to purchase or lease land, to construct and equip a hospital system, to operate and maintain a hospital or hospitals, and to negotiate and contract with . . . private individuals, associations, or corporations for those purposes, all as may be determined to be necessary or desirable for the district.

*Id.* § 1002.103(b). The Act directs the District to establish a hospital or hospital system to provide health care services to district residents by acquiring and equipping buildings and improvements and administering them for hospital purposes. *See id.* § 1002.104(a). Under the Act, a "hospital system may include any facility or equipment the board considers necessary or appropriate for providing health care services, including . . . ancillary support." *Id.* § 1002.104(b). The board also has the authority to acquire and lease office facilities and equipment to staff physicians. *See id.* § 1002.058(b)–(c). Additionally, the Act permits the board to execute contracts to obtain operating, management, or consulting services if the board "retains responsibility for and control of the district's operation." *Id.* § 1002.105(a). Finally, a general law applicable to the District authorizes a hospital district to lease all or part of a hospital owned and operated by such a hospital district if the transaction is in the best interest of the residents of the district. *See* TEX. HEALTH & SAFETY CODE ANN. § 285.051(a) (Vernon 2001).

The Act expressly authorizes the District to obtain a CT scanner as equipment "necessary or appropriate for providing health care services." TEX. SPEC. DIST. CODE ANN. § 1002.104(b)

(Vernon 2006). Thus, the District would be expressly authorized to purchase or lease the CT scanner from the private entity and manage the scanner's operations like other Hospital facilities; lease Hospital space to the private entity for the private entity to operate the imaging center for the benefit of the District's residents; or contract with the private entity to manage, administer, or operate the imaging center. *See id.* §§ 1002.058(b)–(c), .103(b), .104(a)–(b), .105(a); TEX. HEALTH & SAFETY CODE ANN. § 285.051(a) (Vernon 2001). But the proposed transaction is somewhat different, requiring the District to provide a private entity and its facilities operational, managerial, or administrative services in exchange for access to the CT scanner and a share of the profits. *See* Request Letter, *supra* note 1, at 1; Telephone Conversation, *supra* note 3.

We believe that the authority to house and manage the CT scanner as proposed here is implied. First, we note the broad authority given to the District's board of directors to carry out the District's purposes. *See* TEX. SPEC. DIST. CODE ANN. § 1002.103(a) (Vernon 2006) (granting the board "all powers necessary, convenient, or incidental" to carry out the District's purposes); *see also* TEX. CONST. art. IX, § 9 (establishing as a purpose for a hospital district the "responsibility for providing medical and hospital care for its needy inhabitants"); Tex. Att'y Gen. Op. No. JC-0076 (1999) at 2 ("The terms 'necessary, convenient, or useful' provide . . . substantial discretion"). The board may enter into contracts to equip a hospital system "as may be determined to be necessary or desirable for the [D]istrict." TEX. SPEC. DIST. CODE ANN. § 1002.103(b) (Vernon 2006). In addition, you inform us that absent the business arrangement as proposed here, the District would not otherwise be able to acquire the CT scanner. *See* Request Letter, *supra* note 1, at 1. Because the District is expressly authorized to obtain equipment necessary or appropriate for providing health care services, and given your assertion that the proposed transaction is an indispensable method to accomplish this purpose with regard to the CT scanner, we conclude that the District has the implied authority to house the private imaging business in the District's hospital facility and to manage that private imaging business. *See Tri-City*, 142 S.W.2d at 947 (stating that implied powers are those that are indispensable to accomplishing the purposes for which a special district was created).

Having concluded that the District has the necessary statutory authority, we must consider whether such an arrangement would comport with article IX, section 9 and article III, section 52 of the Texas Constitution. *See* TEX. CONST. art. III, § 52(a) (prohibiting political subdivisions from using public resources for private purposes); *id.* art. IX, § 9 (authorizing facilities for hospital purposes and providing medical care); *see also* Tex. Att'y Gen. Op. No. DM-66 (1991) at 3 (stating that in addition to express statutory authority to lease a hospital building, "[w]e must also consider whether the hospital district's plan would serve a 'hospital purpose' consistent with . . . article IX, section 9 . . . and article III, sections 51 and 52, which generally prohibit the use of public funds for private purposes").

Article IX, section 9 contemplates that a hospital district's buildings and equipment be used for "hospital purposes" and requires that a hospital district must "assume full responsibility for providing medical and hospital care for its needy inhabitants." TEX. CONST. art. IX, § 9. You assert that the CT scanner will be used to provide medical services according to the needs of patients. *See* Request Letter, *supra* note 1, at 3. In addition, you state that the District "intends to require that the private entity adopt and follow the indigent care guidelines and policies of the District." *See id.*

at 4. To the extent that the CT scanner is sufficiently made available to needy patients, the Hospital's housing, operating, and managing the CT scanner will not violate article IX, section 9 of the Texas Constitution.

Article III, section 52 prohibits the Legislature from authorizing a county or other political subdivision of the state "to grant public money or thing of value in aid of, or to any individual, association or corporation whatsoever." TEX CONST. art. III, § 52(a). The Texas Supreme Court has set forth a three-part test to determine whether a statute's grant of public resources violates this provision:

> Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002). It appears that the acquisition of the CT scanner will accomplish a public purpose and provide the District the benefit of treating its patients in a manner that would not be available absent the proposed arrangement. *See* Request Letter, *supra* note 1, at 1. It also appears that the District will maintain public control over the public resources at issue here, given the Hospital's responsibility for the CT scanner's operation. *See id.* at 4. However, we cannot ultimately determine whether the District's predominant purpose for the acquisition is to accomplish a public purpose, whether the District's use of the CT scanner and retention of 30 percent of the profits is adequate consideration for its payment of 70 percent of the profits to the private entity, or whether the private entity's fee paid to the Hospital for space usage and management services will be adequate. *See* Tex. Att'y Gen. Op. No. GA-0139 (2004) at 5 (stating that the opinion process does not determine questions of fact).

So long as the constitutional requirements are met, we conclude that the District may enter into the arrangement proposed here for the housing, management, and operation of the private entity's CT scanner.

## S U M M A R Y

The Angleton-Danbury Hospital District of Brazoria County, Texas (the "District") has implied authority under Special District Local Laws Code chapter 1002 and other applicable law to manage and operate a private imaging business housed in the District's hospital facility, provided that the operation of the business complies with article IX, section 9 of the Texas Constitution and the business arrangement complies with article III, section 52 of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee