ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 17, 2009

The Honorable Jim Pitts
Chair, Committee on Appropriations
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. GA-0721

Re: Whether the Hall County Hospital District may contribute funds for the construction of a building to house emergency service vehicles operated by the City of Turkey (RQ-0772-GA)

Dear Representative Pitts:

Your predecessor asked about the authority of the Hall County Hospital District (the "District") to contribute funds for the construction of a building to house emergency service vehicles operated by the City of Turkey.[1] The request letter informs us that the county does not have a hospital and that the District contracts with the cities of Memphis and Turkey to provide mobile emergency medical services. Request Letter at 1. According to the letter, the District wishes to contribute money to the City of Turkey to house a new ambulance that provides services to a portion of Hall County. *Id.* The request letter asserts that: (1) "a new building is necessary to accomplish the hospital district purposes of providing medical care to the district's needy inhabitants and providing for the operation of a mobile emergency medical service," and (2) "the district will retain public control over the contributed funds through the contract the hospital district has with the city for the provision of the mobile emergency medical services." *Id.* at 2.

A special district such as a hospital district board "may exercise only such powers as have been expressly delegated to it by the Legislature, or which exist by clear and unquestioned implication." *Tri-City Fresh Water Supply Dist. No. 2 v. Mann*, 142 S.W.2d 945, 946 (Tex. 1940); *see also Jackson County Hosp. Dist. v. Jackson County Citizens for Continued Hosp. Care*, 669 S.W.2d 147, 154 (Tex. App.—Corpus Christi 1984, no writ) (applying the *Tri-City* standard to determine a hospital district board's powers). The District's enabling legislation requires the District to assume "full responsibility . . . for furnishing medical and hospital care for the district's needy inhabitants," and states that the District "may operate or provide for the operation of a mobile emergency medical service." Act of May 25, 1987, 70th Leg., R.S., ch. 1017, § 5.02, 1987 Tex. Gen.

---

[1]*See* Request Letter at 1–2 (*available at* http://www.texasattorneygeneral.gov).

Laws, 3430, 3433 (the "Act").[2] The District is governed by a board of directors which must manage, control, and administer the funds and resources of the District. *Id.* §§ 4.01(a), 5.03, at 3431, 3433. Under the plain language of the Act, the board has discretion to "provide for the operation" of a mobile emergency medical service. *Id.* § 5.02, at 3433.

Moreover, the board has the authority to determine in the first instance what is necessary to provide for the operation of such service. *See Jackson County Hosp. Dist.*, 669 S.W.2d at 154 (determining that hospital district board's managerial responsibilities authorized it to discontinue emergency room services); Tex. Att'y Gen. Op. No. GA-0472 (2006) at 2 (advising that a hospital district having discretionary authority to provide ambulance services necessarily has the authority to determine the scope of those services). Thus, under the Act, the board has the discretion to determine in the first instance whether an expenditure of District funds to construct a building to house the City of Turkey's emergency service vehicle is necessary to provide for the operation of a mobile emergency medical service.

Next we must consider whether such a contribution to the City of Turkey would be constitutional. Texas Constitution article III, section 52 prohibits the Legislature from authorizing a political subdivision to "lend its credit or to grant public money or thing of value in aid of, or to any individual, association, or corporation whatsoever." TEX. CONST. art. III, § 52(a). Article III, section 52(a) prohibits the gratuitous application of public money by a political subdivision. *Tex. Mun. League Intergov'tl Risk Pool v. Tex. Workers' Comp. Comm'n,* 74 S.W.3d 377, 383 (Tex. 2002); *State ex rel. Grimes County Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd). The Court in *Texas Municipal League* explained that article III, section 52(a) does not prohibit an expenditure of public money that "(1) serves a legitimate public purpose; and (2) affords a clear public benefit received in return." *Tex. Mun. League*, 74 S.W.3d at 383. In that opinion, the court established a three-part test to determine whether a statute requiring an expenditure is for a public purpose under article III, section 52(a):

> Specifically, the Legislature must: (1) ensure that the statute's predominant purpose is to accomplish a public purpose, not to benefit private parties; (2) retain public control over the funds to ensure that the public purpose is accomplished and to protect the public's investment; and (3) ensure that the political subdivision receives a return benefit.

*Id.* at 384.

---

[2]*See also* TEX. CONST. art. IX, §§ 9 (authorizing the creation of hospital districts), 9A (authorizing the Legislature to promulgate "provisions necessary to regulate the provision of health care to residents"); TEX. HEALTH & SAFETY CODE ANN. ch. 286 (Vernon 2001 & Supp. 2008) ("Hospital Districts Created by Voter Approval").

While *Texas Municipal League* concerned payments from a political subdivision to a private party, article III, section 52 has also been construed to prohibit one political subdivision from gratuitously granting its funds to another political subdivision.[3] The provision does not, however, preclude a political subdivision from paying public funds to another political subdivision in order to serve a purpose within the powers of the political subdivision making the grant. *See Grimes County Taxpayers Ass'n*, 565 S.W.2d at 265–66 (holding that a political subdivision may pay or transfer its funds to another political entity if (1) the purpose of the payment or transfer is within the political subdivision's powers, and (2) the political entity receiving the funds is obligated by statute or contract to use the funds for that purpose).

Whether a political subdivision's expenditure comports with the requirements of article III, section 52 of the Texas Constitution is for the governing body of the political subdivision to decide in the first instance. *See, e.g.*, Tex. Att'y Gen. Op. Nos. GA-0706 (2009) at 2 (stating that "[t]he factual determination regarding whether a public expenditure satisfies [the *Texas Municipal League*] test is for the governing body of the political subdivision in the first instance"), GA-0664 (2008) at 4 (stating that "[w]hether a particular transfer of county funds to another political subdivision serves a county purpose is for the commissioners court to determine in the first instance"); *see also Barrington v. Cokinos*, 338 S.W.2d 133, 142 (Tex. 1960) ("[A] court has no right to substitute its judgment and discretion for the judgment and discretion of the governing body upon whom the law visits the primary power and duty to act."). Thus, to determine if the contemplated expenditure is constitutional under article III, section 52, the District's board of directors must consider whether (1) the predominant purpose of the expenditure is to accomplish an authorized public purpose, (2) there are sufficient controls to ensure the public purpose is accomplished and the public investment is protected, and (3) that the District receives a return benefit. *See Tex. Mun. League*, 74 S.W.3d at 383 (setting forth public-purpose criteria); *Grimes County Taxpayers Ass'n*, 565 S.W.2d at 265 (stating that, for a political subdivision's payment to another political subdivision, the expenditure must be within the powers of the entity making the payment).

---

[3]*See, e.g., Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 842 (Tex. 2000) (determining that article III, sections 51 and 52 would not permit a city to gratuitously pay "the City's 'public money'" to a school district); *Harris County Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1104 (Tex. 1940) (holding that "under the plain terms of Section 52 of Article III, . . . no part of the funds of Harris County can be pledged or used to pay the bonds of [the Harris County Flood] District"); *San Antonio Indep. Sch. Dist. v. Bd. of Trs. of San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22, 25 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.) (stating that under article III, sections 51 and 52, a "city cannot donate its funds to an independent municipal corporation such as an independent school district").

## S U M M A R Y

The Hall County Hospital District has express authority to provide for the operation of a mobile emergency medical service. The District's board of directors has the discretion to determine in the first instance whether an expenditure of District funds to construct a building to house the City of Turkey's emergency service vehicle is necessary to provide for the operation of a mobile emergency medical service and whether such an expenditure comports with the requirements of article III, section 52(a) of the Texas Constitution.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

William A. Hill
Assistant Attorney General, Opinion Committee